**NORTHWEST AIRLINES, INC.,**
Appellant,

v.

**The AIR LINE PILOTS ASSOCIATION, INTERNATIONAL, Appellee.**

**No. 20677.**

United States Court of Appeals,
Eighth Circuit.

April 15, 1971.

---

Henry Halladay, Minneapolis, Minn., for appellant.

Robert S. Savelson, New York City, for appellee.

Before VAN OOSTERHOUT, HEANEY and BRIGHT, Circuit Judges.

PER CURIAM.

This matter is before us on the Air Line Pilots Association's petition for rehearing and reconsideration of our decision and order of December 3, 1970. Northwest Airlines, Inc. v. The Air Line Pilots Association, International, 442 F. 2d 246 (8th Cir. 1971).

A brief resume of the developments since December 3 will be helpful in understanding the issues raised.

ALPA promptly complied with the order of this Court. It joined with NWA in submitting to the System Adjustment Board the "basic" issue, "Does the collective bargaining agreement with ALPA and NWA prohibit ALPA from instructing its members to respect the picket lines of a sister union?"

On December 11, 1970, the Board commenced hearings with Father Leo C. Brown serving as the neutral and presiding member. The Board heard testimony and received evidence and position statements from the parties. On the same date, there were public announcements of a tentative settlement of the NWA–BRAC dispute.

On December 12, ALPA's notice to NWA that the pilots would respect the BRAC picket line was withdrawn.

On December 17, ALPA notified the Board that it was petitioning this Court to reconsider its order of December 3. It asked the Board to suspend action until this Court had acted upon the petition. The Board granted the request for sus-

pension after receiving permission from this Court to do so.

ALPA's petition for rehearing urges (1) that final settlement of the BRAC strike and withdrawal of BRAC picket lines has rendered this case and all issues in it moot and, alternatively, (2) that we erred in overruling the trial court and granting injunctive relief to NWA.

At the outset, we must bear in mind that ALPA is here on a petition for rehearing. However dormant the underlying controversy may be now, it was live, real and important when we referred the "basic" issue to the Board in December. Although NWA's request at that time was for an injunction pending appeal, we reached the merits of the matter and referred the "basic" issue to the Board because we felt that little or no further light could be shed on the propriety of such referral by a further evidentiary hearing in the District Court. Furthermore, the public interest in an early settlement of the costly dispute was great. ALPA did not appeal our decision, but joined in submitting the "basic" issue to the Board. To simply dismiss the complaint now on the basis of mootness would not, without more, wipe out the legal significance of our earlier decision.

We can, of course, reverse or withdraw our earlier opinion, or we can let it stand and relieve the parties from the affirmative obligations it imposed.

After considering the arguments advanced by ALPA and for the reasons set forth later in this opinion, we decline to reverse our earlier decision.

■ The arbitration proceedings have been halted midway and we feel it important that they be completed. The issue involved is an important one affecting public interests and has a high probability of recurring in the future. See, e. g., United States v. W. T. Grant Co., 345 U.S. 629, 73 S.Ct. 894, 97 L.Ed. 1303 (1945); Solien For and on Behalf of National Labor Relations Board v. Miscellaneous Drivers & Helpers Un-

ion, Local No. 610, 440 F.2d 124 (8th Cir. March 12, 1971); Consumers Union of United States, Inc. v. Veterans Admin., 436 F.2d 1363 (2nd Cir. 1971). The parties have agreed on an arbiter, and they have submitted testimony and memoranda in support of their positions. It is highly improbable that either party would have additional facts to submit to the arbitration board at a later date. We feel that the issue should be resolved by the System Adjustment Board free from the pressures of an on-going work stoppage. Further, the transitory nature of the labor dispute involved here makes it difficult for the federal courts to properly deal with the issues brought before it. Requiring the arbitration process to be completed now will enable us to more adequately deal with future disputes. See generally, Solien v. Miscellaneous Drivers & Helpers Union, Local No. 610, supra; ITT Lamp Division of Int. Telephone & T. Corp. v. Minter, 435 F.2d 989 (1st Cir. 1970); Comment, Mootness on Appeal in the Supreme Court, 83 Harv.L.Rev. 1672 (1970). Cf., Moore v. Ogilvie, 394 U.S. 814, 89 S.Ct. 1493, 23 L.Ed.2d 1 (1969). Lastly, we believe that the immediate resolution of the contract dispute by the arbiter is of continued importance to the parties. Both the damage portion of the original action and the status of future bargaining contract negotiations between the parties are closely tied to an interpretation of the contract's effect on the activity involved here. The duty to arbitrate the contract dispute was imposed in the midst of a real and serious controversy. For the reasons set out above, we do not believe that the subsequent strike settlement provides sufficient cause to relieve the parties of this duty.

We do, however, dissolve our injunction insofar as it imposed additional obligations on ALPA. We take the latter action because a contract has been signed by BRAC and NWA, the BRAC picket lines have been withdrawn, and ALPA has completely complied with the notice requirements of our December 3 order. Furthermore, there is nothing in this

record to indicate that there is a continuing need for the injunction. See, Boys Markets v. Retail Clerks Union, 398 U.S. 235, 90 S.Ct. 1583, 26 L.Ed.2d 199, 212 (1970).

We turn now to the more important question: Did we err in requiring the parties to submit the "basic" issue to the System Adjustment Board?

▮ When we handed down our original opinion, we did not have the benefit of the trial court's lucid memorandum nor did we have the time to consider the matter as long and as carefully as we would have desired. We have now had that opportunity and reaffirm our earlier view. We adhere to that position because we feel that it is important that parties to collective bargaining agreements submit disputes, arguably arising out of such agreements, to arbitration. This holding is grounded in the conviction that labor disputes ought to be kept out of the courts whenever possible, that arbiters are usually qualified by experience and training to decide such disputes, see, Elgin, J. & E. R. Co. v. Burley, 325 U.S. 711, 752, 65 S.Ct. 1282, 89 L.Ed. 1886 (1945), that the informality of arbitration proceedings and the leadership of the arbiter is conducive to the settlement not only of the precise dispute being arbitrated but of other differences which may be festering in the relationship between the parties, and that an arbiter is in a position to act more expeditiously, if he will,[1] than is a court.

We realize that in the IAM case, NWA made a stronger case for submitting a question similar to the one here to arbitration. Northwest Airlines, Inc. v. International Association of Machinists and Aerospace Workers, AFL–CIO, 442 F.2d 244 (8th Cir. 1971). There, the collective bargaining agreement contained an explicit "no strike" clause that had been interpreted in the past by the union

to prohibit the conduct complained of. Here, a "no strike" clause must be implied from a consideration of the collective bargaining agreement in its entirety and the history of that bargaining. But the fact that NWA had a stronger case against IAM than it has against ALPA is no reason for refusing to require the parties to submit the issue to arbitration. It may mean that NWA will not prevail in this case as it did in the earlier one, but "[a]n order to arbitrate * * * should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage." See, United Steelworkers v. Warrior & Gulf Navigation Co., 363 U.S. 574, 582–583, 80 S.Ct. 1347, 1353, 4 L.Ed.2d 1409 (1960); Textile Workers Union v. Lincoln Mills, 353 U.S. 448, 77 S.Ct. 912, 1 L.Ed.2d 972 (1957).

We are reluctant to further discuss whether or not ALPA has implicitly agreed to refrain from the conduct of the type it engaged in here. To do so might leave the arbiter with the impression that we have formed a view as to how the matter should be decided, and this we do not want to do. See, Local 174 Teamsters, Chauffeurs, Warehousemen and Helpers of America v. Lucas Flour Co., 369 U.S. 95, 106, 82 S.Ct. 571, 7 L.Ed.2d 593 (1962).

The trial court urges:

" * * * If there is a no strike clause it will be by operation of the 'minor dispute' provision of the Railway Labor Act—a statutory provision enacted by Congress. Interpretation of Federal statutes is reserved to the Federal Courts and Administrative Agencies. It is not an appropriate function of a labor arbitrator. * * *"

---

1. The Court wishes to take this opportunity to commend Father Leo C. Brown, the neutral arbiter in the ALPA dispute, and Francis J. Robertson, the neutral in the IAM arbitration, for their expeditious handling of the respective arbitration proceedings.

Northwest Airlines, Inc. v. Air Line Pilots Association, 325 F.Supp. 994 (D. Minn., Dec. 22, 1970).

■■ We agree that the interpretation of federal statutes is reserved to the federal courts and administrative agencies, see, Detroit and Toledo Shore Line R. Co. v. Transportation Union, 396 U.S. 142, 158, 90 S.Ct. 294, 24 L.Ed.2d 325 (1969), and is not an appropriate function of a System Adjustment Board. But we have not asked the Board to undertake an improper function here. In our view, a union can expressly or implicitly agree to a clause that will prohibit it from instructing its members to respect a sister union's lawful picket line. We believe it can be argued that ALPA has done so here. Thus we hold only that there is sufficient evidence in this record to require the question of whether there is such an implied agreement to be submitted to the System Adjustment Board.

We recognize that NWA takes the position that, even if there is no express or implied agreement to refrain from the conduct complained of, the Railway Labor Act itself prohibits it. ALPA vigorously disagrees and the trial court shares ALPA's views. NWA asks us to resolve this issue on this appeal. This question is clearly outside the province of the System Adjustment Board, but we do not believe it is necessary for us to resolve the issue at this time.

■ ALPA's final argument is that the Norris-LaGuardia Act, 47 Stat. 70, as amended, 29 U.S.C. §§ 101–115, prohibits us from requiring the parties to submit this dispute to the Board. Brotherhood of Railroad Trainmen v. Chicago R. & I. R. Co., 353 U.S. 30, 77 S.Ct. 635, 1 L.Ed.2d 622 (1957), holds to the contrary.

We affirm our earlier decision and direct the parties to proceed with and complete the proceeding before the System Adjustment Board. We dissolve our injunction insofar as it imposes additional obligations on ALPA.