**Victor THORNTON, William Washington, Elizabeth Williamson, Individually and in their capacity as Members of the Board of the Gary Municipal Airport Authority District a/k/a The Gary Regional Airport Authority District, and The Gary Municipal Airport Authority District, Plaintiffs–Appellees,**

v.

**Thomas V. BARNES, personally and in his capacity as Mayor, City of Gary, Indiana, and City of Gary, Indiana, Defendants–Appellants.**

No. 88–2464.

United States Court of Appeals, Seventh Circuit.

Argued Jan. 12, 1989.
Decided Dec. 4, 1989.

Arthur A. Daronatsy, Gary, Ind., Douglas M. Grimes, Gary, Ind., for plaintiffs-appellees.

Gilbert King, Jr., Robert D. Rucker, Corp. Counsel, Office of the Corporation Counsel, MacArthur Drake, Cora M. Vaughn, Vaughn and Associates, Gary, Ind., for defendants-appellants.

Before FLAUM, EASTERBROOK, and RIPPLE, Circuit Judges.

RIPPLE, Circuit Judge.

This is an interlocutory appeal from the district court's grant of a preliminary injunction. The district court granted relief to the plaintiffs on the basis that, as board members of the Gary Municipal Airport Authority District, they have a property interest protected by the fourteenth amendment. The City of Gary, Indiana and Mayor Thomas V. Barnes appeal the district court's determination. We reverse the decision of the district court on the authority of our recent decision in *Easter House v. Felder*, 879 F.2d 1458 (7th Cir.1989) (en banc), *petition for cert. filed*, 58 U.S.L.W. 3291 (Oct. 10, 1989).

I

BACKGROUND

In March 1988, Victor Thornton, Elizabeth Williamson, and William Washington,

III (collectively referred to as the Board members or plaintiffs), were three of the four members of the board of the Gary Municipal Airport Authority District (Authority).[1] The Board members allege that they were each appointed to a four-year term on the Authority's board by Richard G. Hatcher, then Mayor of Gary, Indiana. They further allege that Mayor Thomas V. Barnes, Mayor Hatcher's successor, prematurely removed them from their board positions and thus violated their rights under the first and fourteenth amendments. The district court dismissed those counts that alleged a first amendment right of association and a fourteenth amendment liberty interest on the ground that the allegations failed to state a claim. Nevertheless, the court granted the plaintiffs' motion for a preliminary injunction—prohibiting the defendants from attempting to remove them from office through any means other than impeachment—on the ground that the Board members had a property interest in their positions protected by the fourteenth amendment and that they had been denied that interest without due process of law. This court stayed the preliminary injunc-

tion on August 15, 1988. The defendants now appeal the district court's decision.[2]

A. *The Board Members' Removal from Office*

The Authority was established in 1976 pursuant to Indiana Code § 19–6–3.5–1 (now section 8–22–3–1). Mayor Hatcher appointed the plaintiffs to the Authority's board for a four-year term: Mr. Thornton was appointed on October 9, 1984; Ms. Williamson was appointed on October 9, 1985; and Mr. Washington was appointed on October 9, 1987.[3] In May 1987, Mayor Hatcher lost the Democratic primary election to Thomas V. Barnes. Mr. Barnes won the general election in November 1987 and, on January 1, 1988, assumed office as the Mayor of the City of Gary.

In late February or early March 1988, the Board members decided to hire James Holland, the former Deputy Mayor of Gary, as a consultant to the Gary Regional Airport. In a letter dated March 22, 1988, Mayor Barnes notified the plaintiffs that they were being removed, effective March 31, 1988, from the Authority's board. He based his authority on Indiana Code § 36–4–11–2(b).[4] The letter stated that the

---

1. Although the district court, in its order dated July 26, 1988, referred to "four" board members, the City of Gary and Mayor Barnes make clear in their brief that one of the board members, Mr. Quentin Smith, was not terminated and thus is not a party to this action. Appellants' Br. at 3 n. 1.

2. The plaintiffs do not appeal the district court's decision to dismiss the fourteenth amendment liberty interest and the first amendment associational rights claims.

3. Mayor Barnes and the City of Gary dispute the Board members' appointment and expiration dates. In affidavits accompanying their motion for preliminary injunction, the Board members set out their terms as follows: Mr. Thornton stated that he was appointed to serve "for the term October 9, 1984 through October 8, 1988"; Ms. Williamson stated that she was appointed to serve "for the term October 9, 1985 through October 9, 1989"; and Mr. Washington stated that he was appointed to serve "for the term October 9, 1987 through October 9, 1991." R.3. In the record there is evidence of Ms. Williamson's having two appointment certificates, one with a term ending October 9, 1989, and the other with a term ending December 31, 1987.

See R.1 Ex. C & R.36 Ex. B. The plaintiffs attached the certificate with a term ending October 9, 1989 to the original complaint filed March 25, 1988. The defendants did not contest the validity of this certificate until July 28, 1988, after the rendition of the district court's order. Because this issue could have been timely raised in the four months that the action was pending before the district court, the issue is waived and, for purposes of the preliminary injunction, we consider Ms. Williamson's term as ending October 9, 1989.

4. At the time Mayor Barnes' letter was sent, the portion of section 36–4–11–2 that dealt with removal from office provided:

(b) The executive may suspend or remove from office any officers, deputies, or other employees of the city appointed by him or a prior executive, by notifying them to that effect and sending a written statement of the reasons for the suspension or removal to the city legislative body.

This section was amended by 1988 Ind.Acts 185, Sec. 3, and, effective July 1, 1988, the sections that deal with removal provide:

(c) This subsection does not apply to appointments made under IC 20 [Education]. The

plaintiffs were being removed for one or more of the following reasons: 1) violation of the Indiana Open Door Act in making the decision to hire the former deputy mayor as consultant to the board; 2) failure to provide capable guidance in the redevelopment of the Gary Regional Airport; or 3) inability to disassociate from the prior administration's policies and showing a lack of desire to carry out the current administration's policies. Mayor Barnes, subsequent to sending this letter of removal, appointed three new board members who are not parties to this action.

On March 25, 1988, the plaintiffs filed a complaint against the defendants, the City of Gary and Mayor Barnes (collectively referred to as the municipality). They alleged that the municipality had deprived them of their first amendment right to free association and their liberty and property interests protected by the fourteenth amendment. The complaint sought interim relief in the form of a temporary restraining order (TRO) and a preliminary injunction prohibiting their removal during the pendency of the action. On March 31, 1988, the municipality filed a motion to dismiss on the grounds that the district court lacked subject matter jurisdiction and that the Board members had failed to state a claim. That same day, the district court denied the TRO.

The case was referred to a magistrate, pursuant to 28 U.S.C. § 636(b)(1)(B), for recommendation on whether a preliminary injunction ought to be granted. On May 12, 1988, the magistrate recommended that such relief be denied. The magistrate concluded that the plaintiffs had failed to establish the first element of their claim for a preliminary injunction, likelihood of success on the merits, and thus found it unnecessary to address the other criteria for the grant of a preliminary injunction. Four days later, the Board members sought to amend their complaint and requested another TRO. The district court denied this request.[5]

### B. *The District Court Opinion*

The Board members filed objections to the magistrate's recommendation. On July 26, 1988, the district court accepted the recommendation that the claims based on the first amendment right of association and fourteenth amendment liberty interest should be dismissed for failure to state a claim. However, the district court concluded that the Board members were likely to succeed on their claim that they had a property interest entitled to fourteenth amendment protection. *Thornton v. Barnes*, No. H 88–168 (N.D.Ind. July 26, 1988) [hereinafter Order]. Interpreting Indiana law, the district court concluded that the Board members, once appointed, had a right to hold office for a term of four years. Although the magistrate had found that the mayor's power to remove the members from office at any time, pursuant to Indiana Code § 36–4–11–2(b) (later amended to § 36–4–11–2(d)),[6] negated plaintiffs' claim to a property interest, the district court disagreed. The court noted that section 36–4–11–2(b) empowered the mayor

---

executive may remove from office a board or commission member appointed by a prior executive if the appointment was made on or after the date of the general election and:

  (1) the prior executive was a candidate for nomination as a party's candidate for election to the office of executive at the primary election held during the last year of the prior executive's term of office and the prior executive was not nominated at that election; or

  (2) the prior executive was a candidate for another term of office as executive at the general election held during the last year of the prior executive's term of office and the prior executive was not elected to another term of office at that election;

and if the executive notifies the appointee of the removal and sends a written statement of the reasons for the removal to the city legislative body.

  (d) The executive may suspend or remove from office any officers, deputies, or other employees of the city appointed by the executive or a prior executive, by notifying them to that effect and sending a written statement of the reasons for the suspension or removal to the city legislative body.

Ind.Code § 36–4–11–2.

**5.** The district court sanctioned the Board members because their motion was inadequate and because they had failed to notify the municipality or to certify why the notice had not been given.

**6.** For the text of § 36–4–11–2 before and after the amendment see *supra* note 4.

to remove from office only "officers, deputies, or other employees *of the city.*" (emphasis supplied). In the court's view, the Board members, as appointees of an independent municipal corporation, were not employees "of the city" and thus not subject to removal under this statute; impeachment was the only means of removal available.

Having concluded that the plaintiffs had a likelihood of success in proving the existence of a property interest, the court discussed the other factors necessary to grant a preliminary injunction. The court noted that the plaintiffs had no adequate remedy at law: damages could not be paid because the Board members served without compensation. The plaintiffs' irreparable harm arose because the plaintiffs suffered deprivations under both the United States and the Indiana Constitutions to which "it is difficult to assign a numerical value." Order at 12. The court determined that the public interest would not be harmed because it was in the public interest to have the Authority run by the properly appointed board. Finally, the court found that the balance of harms was "roughly equivalent." *Id.* at 13.

The municipality filed a motion to stay the preliminary injunction. The district court denied the motion on August 4, 1988, but, on August 15, 1988, this court issued an order staying the July 26 preliminary injunction pending appeal. We now reverse the order of the district court.

## II

### ANALYSIS

#### A. *The Applicable Standards*

This case comes to us from the grant of a preliminary injunction by the district court. The appropriate judicial methodology for considering a request for a preliminary injunction has been set forth in numerous opinions of this court. *See, e.g., Faheem-el v. Klincar,* 841 F.2d 712, 716 (7th Cir.1988) (en banc), *Baja Contractors, Inc. v. City of Chicago,* 830 F.2d 667, 675 (7th Cir.1987), *cert. denied,* 485 U.S. 993, 108 S.Ct. 1301, 99 L.Ed.2d 511 (1988); *Brunswick Corp. v. Jones,* 784 F.2d 271, 273–74 (7th Cir.1986); *Lawson Prods., Inc.*

*v. Avnet, Inc.,* 782 F.2d 1429, 1432 (7th Cir.1986); *American Hosp. Supply Corp. v. Hospital Prods., Ltd.,* 780 F.2d 589, 593–94 (7th Cir.1986); *Roland Mach. Co. v. Dresser Indus., Inc.,* 749 F.2d 380, 382–83 (7th Cir.1984). While the precise semantical formulation has varied slightly at times, the essence of the methodology has remained constant. Recently, in *Ping v. National Education Association,* 870 F.2d 1369 (7th Cir.1989), Judge Flaum, writing for the court, summarized the factors that a district court ought to consider in determining whether to grant a preliminary injunction:

> Before a preliminary injunction will issue, the movant must show, as a threshold matter, that: (1) they have no adequate remedy at law; (2) they will suffer irreparable harm if the injunction is not granted; and (3) they have *some* likelihood of success on the merits in the sense that their "chances are better than negligible." *Roland Machinery Co. v. Dresser Industries, Inc.,* 749 F.2d 380, 386–87 (7th Cir.1984); *see also Lawson Products, Inc. v. Avnet, Inc.,* 782 F.2d 1429, 1433 (7th Cir.1986). If the movant can meet this threshold burden, the inquiry then becomes a "sliding scale" analysis of the harm to the parties and the public from the grant or denial of the injunction and the actual likelihood of success on the merits. In particular, and keeping in mind that the public interest may become important in a given case, the "more likely the plaintiff is to win, the less heavily need the balance of harms weigh in his favor [in order to get the injunction]; the less likely he is to win, the more need it weigh in his favor." *Roland Machinery,* 749 F.2d at 387.

*Id.* at 1371–72 (emphasis in original).

The standard governing our review of the district court's determination is firmly established and, as we noted in *Lawson Products,* is tailored to the various functions that the district court must perform in fulfillment of its responsibilities:

> [T]he preliminary injunction decision involves the resolution of a number of different issues, some of which are non-discretionary; others, like the final weighing and balancing of the equities,

are classically left to the discretion of the district judge. Appellate review therefore must vary with the nature of the lower court decision. When a court of appeals considers a preliminary injunction order, which should set forth the judge's reasoning under Fed. R.Civ.P. 65(d), the factual determinations are reviewed under a clearly erroneous standard and the necessary legal conclusions are given *de novo* review. *SEC v. Suter*, 732 F.2d 1294, 1300 (7th Cir.1984); *E. Remy Martin & Co. v. Shaw–Ross International Imports*, 756 F.2d 1525, 1529 (11th Cir.1985). However, the ultimate evaluation and balancing of the equitable factors is a highly discretionary decision and one to which this court must give substantial deference. The variance in the standard of review expressed in *Roland* may, in part, be attributed to the existence of errors of law or fact. Clearly, a factual or legal error may alone be sufficient to establish that the court "abused its discretion" in making its final determination.

782 F.2d at 1437. Consequently, " 'our review is limited to determining "whether the judge exceeded the bounds of permissible choice in the circumstances, not what we would have done if we had been in his shoes." ' " *International Kennel Club, Inc. v. Mighty Star, Inc.*, 846 F.2d 1079, 1084 (7th Cir.1988) (quoting *A.J. Canfield Co. v. Vess Beverages, Inc.*, 796 F.2d 903, 906 (7th Cir.1986) (quoting *Roland Mach. Co.*, 749 F.2d at 390)).

### B. *Application of the Standards*

We first examine whether the Board members established a likelihood of success on the merits. The Board members brought this action under 42 U.S.C. § 1983. They sought reinstatement stemming from the alleged violation of their due process rights under the Constitution.[7] "[A] public official is liable under § 1983 only 'if he *causes* the plaintiff to be subjected to deprivation of his constitutional rights.' " *Baker v. McCollan*, 443 U.S. 137, 142, 99 S.Ct. 2689, 2693, 61 L.Ed.2d 433 (1979) (quoting *McCollan v. Tate*, 575 F.2d 509, 512 (5th Cir.1978) (emphasis in original)). Therefore, in order to prevail ultimately in this action under section 1983, the plaintiffs will have to prove that Mayor Barnes has deprived them of a property interest protected by the fourteenth amendment without due process of law. In the following subsections we shall examine the plaintiffs' case with respect to each element of the cause of action.[8]

---

**7.** The plaintiffs originally sought reinstatement *and damages* stemming from the alleged violation of their first amendment and due process rights under the Constitution. At oral argument, the court pointed out that damages had been requested in the original complaint and questioned whether a request for damages would be adequate to keep Mr. Thornton's claim alive even in light of the fact that his term of appointment had expired. Counsel for the Board members clarified that the damages were requested only as to a first amendment claim that was part of the original complaint, but not a part of the action before this court. Plaintiffs' counsel stated that "with the issues that are before this court, the issue of what happens to Mr. Thornton is simply one that proceeds according to state law. If his term has expired, his term has expired." Mr. Thornton was appointed for a four-year term that, by his own admission, expired on October 8, 1988. R.3 at Affidavit of Thornton. Plaintiffs' counsel did not argue that Mr. Thornton would have some right to an extended term. Because, on the plaintiffs' own admission, the issue of damages is not before this court and there is no remedy that we can grant to Mr. Thornton, the district court's decision to grant a preliminary injunc-

tion on behalf of Mr. Thornton is vacated as moot. Ms. Williamson's term has expired during the pendency of this appeal. Therefore, the preliminary injunction on her behalf must also be vacated as moot.

**8.** The concurring opinion seems to take the position that we ought not address whether a property right exists because we later conclude that, even if one does not exist, the state supplies all the process that is due. We prefer to follow the methodology suggested by the Supreme Court in *Parratt v. Taylor*, 451 U.S. 527, 536–37, 101 S.Ct. 1908, 1913–14, 68 L.Ed.2d 420 (1981), and *Easter House v. Felder*, 879 F.2d 1458, 1464–65 (7th Cir.1989) (en banc), *petition for cert. filed*, 58 U.S.L.W. 3291 (Oct. 10, 1989). While the *Easter House* court decided not to resolve the property right question definitively, it reached that decision only after a plenary discussion of the merits. *Easter House*, 879 F.2d at 1465–66. If we had followed the course suggested by the concurring opinion, we would be criticized, no doubt, for expounding unnecessarily upon the contours of an extraordinary writ under state law.

**1386**

### 1.

■ In order to establish a claim for loss of property without due process of law in violation of the fourteenth amendment, a plaintiff must demonstrate a protectible property interest in his employment. *Bishop v. Wood,* 426 U.S. 341, 343, 96 S.Ct. 2074, 2077, 48 L.Ed.2d 684 (1976); *Board of Regents v. Roth,* 408 U.S. 564, 576–77, 92 S.Ct. 2701, 2708–09, 33 L.Ed.2d 548 (1972); *Perry v. Sinderman,* 408 U.S. 593, 601, 92 S.Ct. 2694, 2699, 33 L.Ed.2d 570 (1972); *see also Farmer v. Lane,* 864 F.2d 473, 478 (7th Cir.1988); *Upadhya v. Langenberg,* 834 F.2d 661, 662 (7th Cir.1987), *cert. denied,* — U.S. —, 108 S.Ct. 2016, 100 L.Ed.2d 603 (1988). Ever since *Board of Regents v. Roth,* the basic criteria for the recognition of a property interest have been well established:

> To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it. . . .
>
> Property interests, of course, are not created by the Constitution. Rather, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure benefits and that support claims of entitlement to those benefits.

408 U.S. at 577, 92 S.Ct. at 2709. Therefore, "[p]roperty interests in employment may be created by express or implied contracts, municipal ordinances or state laws—including those 'rules or understandings that secure certain benefits and that support claims of entitlement to those benefits.'" *Farmer,* 864 F.2d at 478 (quoting *Roth,* 408 U.S. at 577, 92 S.Ct. at 2709). "Although we look to the procedural guarantees granted by contract, ordinance, statute or regulation in assessing whether a property interest exists, the right to those procedural guarantees is not itself a property right." *Id.* "There is neither a 'liberty' nor a 'property' interest in procedures themselves. . . ." *Fleury v. Clayton,* 847 F.2d 1229, 1231 (7th Cir.1988). "Process is not an end in itself. Its constitutional purpose is to protect a substantive interest to which the individual has a legitimate claim of entitlement." *Olim v. Wakinekona,* 461 U.S. 238, 250, 103 S.Ct. 1741, 1748, 75 L.Ed.2d 813 (1983); *see also Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532, 541, 105 S.Ct. 1487, 1492, 84 L.Ed.2d 494 (1985); *Archie v. City of Racine,* 847 F.2d 1211, 1217 (7th Cir.1988) (en banc), *cert. denied,* — U.S. —, 109 S.Ct. 1338, 103 L.Ed.2d 809 (1989); *Weinstein v. University of Illinois,* 811 F.2d 1091, 1097 (7th Cir.1987). "Once state law defines the *substance,* constitutional law establishes the minimum procedures." *Archie,* 847 F.2d at 1217 (emphasis supplied). "The right to due process 'is conferred, not by legislative grace, but by constitutional guarantee.'" *Cleveland Bd. of Educ.,* 470 U.S. at 541, 105 S.Ct. at 1492 (quoting *Arnett v. Kennedy,* 416 U.S. 134, 167, 94 S.Ct. 1633, 1650, 40 L.Ed.2d 15 (1974) (Powell, J., concurring in part and concurring in result in part)). Therefore, once a person has established a property interest in his position, "he cannot be fired constitutionally unless he is given the rudiments of fair procedure." *Jungels v. Pierce,* 825 F.2d 1127, 1130 (7th Cir. 1987); *see also Patkus v. Sangamon–Cass Consortium,* 769 F.2d 1251, 1265 (7th Cir. 1985). *See generally Cleveland Bd. of Educ.,* 470 U.S. at 542–46, 105 S.Ct. at 1493–95.

In applying these principles, this court has acknowledged that "[t]he Supreme Court has held that the interest which a public employee has in his job is property within the meaning of the due process clauses of the Fifth and Fourteenth Amendments if he has tenure rights in the job—that is, if he can be fired only for misconduct." *Jungels,* 825 F.2d at 1130 (citing *Cleveland Board of Education* and *Patkus* ). Furthermore, we have recognized that the concept of tenured employment also applies to "the case of employment for a fixed (rather than indefinite) period terminable only for cause." *Id.*

The methodology by which these principles are to be applied is well established in our precedent. In order to ascertain whether employees have a "protectible property interest," we must turn to the

applicable state law to determine whether state law creates a cognizable property interest in their position. *See, e.g., Patkus,* 769 F.2d at 1262–64. In undertaking this task, we begin by noting that "a district court's determinations of state property law, particularly those based on complex and seldom-interpreted provisions of state and local enactments, will not be lightly overturned." *Wolf v. City of Fitchburg,* 870 F.2d 1327, 1330 (7th Cir.1989). " '[T]he interpretation of state law by a district court judge sitting in the state whose law is in question is entitled to considerable deference.' " *Id.* (quoting *Fontano v. City of Chicago,* 820 F.2d 213, 215 (7th Cir. 1987)). Therefore, although questions of law will be reviewed *de novo,* "we shall accord great weight to the analysis of the district court." *Id.*

In a detailed and extensive opinion, the district judge, a former member of the Indiana judiciary, surveyed the relatively complex manner in which the Indiana legislature has dealt with the governance of aviation facilities by local municipalities. The court noted that municipalities may establish aviation departments within the municipal government. Under this option, members of the board of aviation commissioners are subject to removal by the mayor. On the other hand, a municipality may establish, either alone or with other municipal entities within the state, airport authorities. Airport authorities are municipal corporations. Ind.Code § 36–1–2–10. Consequently, they are more autonomous than aviation departments and, not surprisingly, their members have more autonomy than their counterparts in aviation departments. Therefore, in addition to having a fixed term in office, they are not subject to removal by the mayor. As the district court noted, Indiana Code § 36–4–11–2(b) provided at the time of the purported discharge that:

> The executive may suspend or remove from office any officers, deputies, or other employees of the city appointed by him or a prior executive, by notifying them to that effect and sending a written statement of the reasons for the suspension or removal to the city legislative body.

The district court reasoned that, "[u]nder the elementary principle that statutes are to be given their plain meaning ... it is clear that the qualifying phrase 'of the city' applies to officers and deputies as well as employees. Thus, a mayor may remove board members of an airport authority if they are officers, deputies, or employees 'of the city.' They are not." Order at 6.

This reading of the plain wording of the statute is reinforced, as the district court noted, by the structure of the statutory scheme when read as a whole. "Because an aviation department is an executive department of a city, it is logical that the mayor may remove its commissioners. The same cannot be said for removal of officers of a separate municipal corporation." *Id.* at 8. Furthermore, the district court's reading of the statute's wording is also reinforced by a recent official opinion of the Attorney General of Indiana. Indiana Code provides: "[o]fficers, departments, boards, commissions, and other agencies *of the city* may not employ attorneys without the authorization of the head of the department of law." Ind.Code § 36–4–9–12 (emphasis supplied). The Attorney General was asked whether the term "of the city" applies to "governmental entities created by city ordinances such as the ... Gary Municipal Airport Authority District...." Op. Att'y Gen. No. 89–2, Ind.Reg. vol. 12, no. 6, at 1469 (March 1, 1989). The Attorney General concluded that, as a municipal corporation, an airport authority board "is a separate political subdivision and *not* a department, board, commission or agency 'of the city.' " *Id.* at 1470 (emphasis supplied). The definition of this phrase, within the same chapter of the code as the provision for removal from office, would most certainly be interpreted consistently. In our view, the district court has demonstrated convincingly that the members of the Airport Authority have, under the laws of Indiana, both a fixed term in office and the right to remain in office for that term unless they commit the sort of misconduct that would justify impeachment.

In reaching this conclusion, we are aware that the district court, in disagreement with the recommendation of the magis-

trate, did not believe that the absence of regular compensation for the position altered the foregoing analysis. As the district court acknowledged, this court, in *dicta*, found "appealing" the proposition that an "interest in a job essentially honorific does not have the dignity of constitutional property." *Jungels*, 825 F.2d at 1130. As the district court also noted, we have not been presented with an occasion that has required us to confront this issue squarely[9] and, as the district court also intimated, this case hardly presents us with such an occasion—at least not on the record before us on this preliminary injunction. The district court correctly observed that the scope of the duties and responsibilities of a member of the Airport Authority[10] hardly describes an "honorific position." We live, fortunately, in a country where service to one's country and state is not measured simply in terms of financial remuneration. Indeed, the Supreme Court has acknowledged the "traditional volunteer assistance which has been ... drawn on to complement the operation of many local governmental functions." *National League of Cities v. Usery*, 426 U.S. 833, 850–51, 96

S.Ct. 2465, 2474, 49 L.Ed.2d 245 (1976), *overruled on other grounds*, 469 U.S. 528, 105 S.Ct. 1005, 83 L.Ed.2d 1016 (1985). We must not forget that "[e]ach State and local Government ... has had wide scope in deciding its governmental form and procedures to meet its peculiar needs. All kinds of nominally paid and purely volunteer Boards and Commissions have operated everything from airports to zoning.... From the sturdy New England towns to Western crossroads which became towns as the law became viable, vast individualistic volunteerism has kept Government costs and taxes low." Brief for the National League of Cities at 87, *National League of Cities v. Usery*, 426 U.S. 833, 96 S.Ct. 2465, 49 L.Ed.2d 245. No doubt, the matter of compensation, as well as the time demands of a position, *see Jungels*, 825 F.2d at 1130, are relevant considerations when the statutory language leaves unclear whether the legislature intended to establish a "legitimate claim of entitlement" to an office.[11] But there are other factors that can be considered, including powers and responsibilities. Here, we cannot disturb the district court's conclusion.[12]

**9.** The concurring opinion stresses that there is no case specifically finding a property right in an office for which there is no remuneration. Nor is there a case declining to find a property interest under such circumstances. The case cited in the concurring opinion, *Royster v. Board of Trustees*, 774 F.2d 618 (4th Cir.1985), *cert. denied*, 475 U.S. 1121, 106 S.Ct. 1638, 90 L.Ed.2d 184 (1986), will not do. In *Royster*, the plaintiff had a *contract for employment* that established his salary for the contract term. His employer fired the plaintiff, but paid him his entire salary. Plaintiff sued to recover his job for the remainder of the contract term. The Fourth Circuit concluded that plaintiff was only entitled to the salary promised by the contract and not entitled to the job itself. *Id.* at 621. The only property interest held by the plaintiff in *Royster* was payment in accordance with his contract. As Judge Widener emphasized, *Royster* dealt with a "contractual right to continued public employment," and the contract provided plaintiff "only the right to be fully compensated." *Id.* at 621. This case presents, of course, a very different situation. The plaintiffs hold office—tenured office—by the explicit provisions of state law. In our view, the totality of circumstances surrounding that grant of tenure makes it clear that, despite the lack of remuneration, state law gives the incumbents the right to re-

main in office. Thus, our analysis is grounded on the "substance" of the plaintiffs' rights, which is found in state law. *See Archie v. City of Racine*, 847 F.2d 1211, 1217 (7th Cir.1988) (en banc), *cert. denied*, —— U.S. ——, 109 S.Ct. 1338, 103 L.Ed.2d 809 (1989).

**10.** Ind.Code § 8–22–3–11.

**11.** The concurring opinion suggests that Judge Posner's opinion in *Jungels v. Pierce*, 825 F.2d 1127 (7th Cir.1987), has induced us to err by considering the importance of the position in determining the existence of a property interest. However, as we note in the text, we think the importance of the position, the nature of the responsibilities, and the demands of the office are simply relevant factors to consider in attempting to discern whether the legislature intended to create a "claim of entitlement." *Roth*, 408 U.S. at 577, 92 S.Ct. at 2709.

**12.** Because this case comes to us on appeal from a grant of preliminary injunction, we must, of course, simply determine the plaintiffs' probability of success on the merits. Therefore, the criticism of the concurring opinion notwithstanding, we do not decide definitively whether a property right exists.

2.

In order to establish that they have a likelihood of success on the merits, the Board members must do more than establish a cognizable property interest. They also must establish that they were deprived of that property interest *without due process of law*. In our view, they cannot establish this essential element of their case.

Since this case was decided by the district court, this court has had occasion to address, in rather plenary fashion, when action under the color of state law can be said to deprive a person of property without due process of law. *See Easter House v. Felder*, 879 F.2d 1458 (7th Cir.1989) (en banc), *petition for cert. filed*, 58 U.S.L.W. 3291 (Oct. 10, 1989). *Easter House* arose because of allegations that officials of the Illinois Department of Children and Family Services had, under the color of state law, taken action to injure Easter House, a private adoption agency. Alleging a deprivation of property without due process of law, Easter House brought an action, under section 1983, against the responsible state officials. This court determined that state law provided Easter House with adequate recourse through available tort actions. Consequently, Easter House could not claim that the alleged "random and unauthorized" acts of state officials amounted to a denial of due process of law. *Id.* at 1477. In reaching this conclusion, we stressed that our holding was required by our duty to adhere faithfully to the earlier decision of the Supreme Court in *Parratt v. Taylor*, 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981):

> Today, we apply the principles established by a line of authority flowing from *Parratt v. Taylor* to maintain a delicate balance between the state and federal legislative and judicial systems. Where adequate postdeprivation remedies exist in a state to redress a property deprivation which has resulted from an employ-

ee's random and unauthorized deviation from established state policy and procedure, a party cannot maintain a section 1983 action because he has received all of the process which was due.

*Easter House*, 879 F.2d at 1477–78. As Judge Easterbrook put it in his separate concurring opinion:

> To understand whether the "state" has acted without due process of law, we must examine the state's procedures as a whole. If the "state" puts things to rights after a state actor has misbehaved, the state has fulfilled its constitutional obligation to its residents. State courts offer "due process" to those complaining of private wrongs; state courts also may supply the process that is "due" when a state actor commits a wrong.

*Id.* at 1480 (Easterbrook, J., concurring).

We believe that the principle established by the Supreme Court in *Parratt* and upon which we elaborated in *Easter House* must control the situation presented in the case now before us. As we have pointed out previously, Indiana law permits the creation of an airport authority whose members have the statutory right to exercise the powers of their office for four years unless removed for cause by impeachment. By the same token, Indiana law also provides a remedy for one whose right to hold such an office is challenged. By statute, Indiana provides that the right to hold an office may be challenged by the writ of *quo warranto*. *See* Ind.Code § 34–1–59–1.[13] "*Quo warranto* is the proper remedy for determination of the right of a party to hold office." *Indiana ex rel. Brown v. Circuit Court of Marion County*, 430 N.E.2d 786, 787 (Ind.1982). "Traditionally the proceeding must be brought in the name of the State or other prosecuting officer. However, a private person may bring a *quo warranto* if he claims an interest on his own relation, or a special interest beyond that of a taxpayer." *Id.* (citation omitted). *See* Ind.Code § 34–1–59–4;[14] *see*

---

13. In pertinent part, Indiana Code § 34–1–59–1 provides:

An information may be filed against any person or corporation in the following cases:
    (1) When any person shall usurp, intrude into, or unlawfully hold or exercise any public office or any franchise within this state, or

any office in any corporation created by the authority of this state.

14. "Whenever an information shall be filed against a person for usurping an office, by the prosecuting attorney, he shall also set forth therein the name of the person rightfully enti-

*also Madden v. Houck,* 403 N.E.2d 1133, 1135 (Ind.Ct.App.1980); *Heathco v. State ex rel. Addison,* 209 Ind. 667, 199 N.E. 260, 262 (1936); *State ex rel. Schrage v. Boyle,* 206 Ind. 574, 190 N.E. 743, 745 (1934).

Indeed, this case exemplifies, in particularly stark fashion, the rationale of *Parratt* and *Easter House.* In his opinion for the court in *Easter House,* Judge Kanne stressed that *Parratt* manifested a concern on the part of the Supreme Court "to maintain a delicate balance between the state and federal legislative and judicial systems." 879 F.2d at 1477. This case involves, primarily, a dispute between two *state* government authorities with respect to the prerogatives of their respective offices—prerogatives set forth in state law. It is difficult to conceive of a task more suited to the state judiciary than the task of allocating the distribution of power of state officers under state law.

### CONCLUSION

Because the plaintiffs cannot establish that their deprivation is grounded in a denial of due process of law, they cannot establish a constitutional violation. We see no chance that the plaintiffs will succeed on the merits. Accordingly, we need not explore the remaining criteria for a preliminary injunction. The judgment of the district court is reversed.

REVERSED.

EASTERBROOK, Circuit Judge, concurring.

Indiana supplies all of the process due for any misstep by the Mayor. This conclusion, in Part II.B.2 of the court's opinion, makes it unnecessary to resolve antecedent questions. Everything in Part II.B.1 of the opinion is dictum. We should do exactly as in *Easter House v. Felder,* 879 F.2d 1458, 1466 (7th Cir.1989) (en banc), the basis of Part II.B.2, and say that whether or not the plaintiff has established a property interest, he must lose because the state supplies process. Although dictum has its place, this is not one of them. Part II.B.1 covers two subjects: the inter-

pretation of Indiana's rules establishing tenure of office for members of the Gary Airport Authority, and the extent of "property" in a public office. The first of these involves the allocation of authority within a different sovereign, something we should leave to that polity if at all possible. The second involves an unresolved question of federal law, on which the majority is at odds with both language in earlier opinions of this court and the approach prevailing in other courts. Dictum sometimes lights the way to improvements in the law or clarifies tangled strands of doctrine. By contrast, the majority's detour is meddlesome to the extent it tells Indiana the meaning of its own law and misleading to the extent it discusses constitutional law. I therefore do not join Part II.B.1.

Indiana established the office the plaintiffs hold, and its law governs their tenure. Whether the Mayor, as opposed to the legislature, may remove the commissioners is a question about the allocation of powers within Indiana. Cf. *United Beverage Co. v. Indiana Alcoholic Beverage Commission,* 760 F.2d 155 (7th Cir.1985). State courts should answer this question, my colleagues say in Part II.B.2. Why, then, do we do so ourselves in Part II.B.1? There is no need to decide who within Indiana is charged with the responsibility of removing commissioners and two good reasons not to. First, that question would be the main event of the *quo warranto* action we invite the plaintiffs to bring. Under the law of issue preclusion, what we say about the Mayor's powers *vis-à-vis* those of the legislature will not bind the state court, because only issues "necessarily" decided in the first case are foreclosed. *McBurnie v. Seaton,* 111 Ind. 56, 12 N.E. 101 (1887); *Peterson v. Culver Educational Foundation,* 402 N.E.2d 448, 461 (Ind.App. 1st Dist.). Second, it is singularly inappropriate for a federal court to tell state officials that they do not understand the legal rules governing the state's own organization. "[I]t is difficult to think of a greater intrusion on state sovereignty than when a federal court instructs state officials on how

tled to the office, with an averment of his right thereto; and when filed by any other person, he

shall show his interest in the matter, and he may claim the damages he has sustained."

to conform their conduct to state law", *Pennhurst State School & Hospital v. Halderman,* 465 U.S. 89, 106, 104 S.Ct. 900, 911, 79 L.Ed.2d 67 (1984), which is exactly what Part II.B.1 does. See also *Huggins v. Isenbarger,* 798 F.2d 203, 207–10 (7th Cir.1986) (concurring opinion).

Sometimes federal courts must resolve questions of state law in order to identify "property". *Board of Regents v. Roth,* 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). Property, as states define it, may not be snatched away without process, as the federal courts require it. *Cleveland Board of Education v. Loudermill,* 470 U.S. 532, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985). We needn't work through state law to identify "property", given the conclusion that the state supplies enough process. Indeed, we shouldn't even think of this as a due process case. Plaintiffs do not say that the Mayor fired them without hearing them out; they say that the Mayor had no authority to fire them. Mayor Barnes could have given the plaintiffs nonstop hearings without altering the nature of their grievance. If the Mayor may sack the commissioners, he may do so without process (for the Mayor's subordinates, like the President's cabinet officers, lack tenure); if the Mayor lacks authority to fire them, the process he supplies is irrelevant. So the commissioners' claim is substantive, not procedural. Not even that oxymoron "substantive due process" describes this position; it is one of a substantive interest under state law. Due process is just their entree to federal court, and a weak one. Violation of state law is not denial of due process. *Archie v. City of Racine,* 847 F.2d 1211, 1216–18 (7th Cir.1988) (en banc). The plaintiffs' two-step—because the defendant can't fire me at all, I have a legitimate claim of entitlement to my job; because this entitlement was abridged without hearings my discharge violated the Constitution—converts violations of state law into constitutional offenses. *Archie,* following an unbroken line of cases in the Supreme Court, holds that this maneuver fails.

Discussing constitutional law without considering this difficulty, the majority says that the position of airport commissioner is "property" even though uncompensated. Although *Jungels v. Pierce,* 825 F.2d 1127, 1130 (7th Cir.1987), found "appealing" the contention that unremunerated public offices are not "property" for purposes of the Due Process Clause, the majority replies that "[w]e live, fortunately, in a country where service to one's country and state is not measured simply in terms of financial remuneration." Op. 1388. In other words, an unpaid job may be important to the populace and the incumbent. "[T]here are other factors that must be weighed, including powers and responsibilities." *Id.* at 1388. From this my colleagues conclude that the plaintiffs hold "property" interests in their jobs.

Perhaps the Supreme Court should have created a jurisprudence in which the importance or gravity of an interest defines "property"; several Justices have championed that cause. Persistent majorities have taken a different approach, however. *Roth,* 408 U.S. at 570–71, 92 S.Ct. at 2705–06, holds that the nature rather than the weight of the interest governs. "Weight" comes into play in deciding what process is due but is not a reason a particular interest qualifies as property. Even decisions that deprive people of very important things fall outside the domain of "property". *Roth* illustrates this well, as do many more cases. E.g., *Meachum v. Fano,* 427 U.S. 215, 96 S.Ct. 2532, 49 L.Ed.2d 451 (1976). On the other hand trifles such as the hobby kit in *Parratt v. Taylor,* 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), overruled in part on other grounds, *Daniels v. Williams,* 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986), qualify as "property" if their holders have legitimate claims of entitlement—that is, interests depending on substantive criteria. See also, e.g., *Kentucky Department of Corrections v. Thompson,* —— U.S. ——, 109 S.Ct. 1904, 104 L.Ed.2d 506 (1989).

*Jungels* and the majority alike send us down the wrong path to the extent they suggest that the answer to the question "Is this job property?" depends on its importance, measured by salary or duties or public esteem. The initial question is whether there is a legitimate claim of entitlement,

dependent on substantive criteria. If there is such a claim, we must ask: in *what*? What, particularly, is the "property" in a public job? Is it the emoluments of the office, the official power of the office, or the honor of it all? That depends in turn on what the person holds *against* public claims. A contract may give me a right to occupy an office and receive a salary, or it may give me Blackacre. I hold Blackacre against claims made by the state and fellow citizens, and in this same sense I also hold the income stream of the office. "Honor" and public esteem are not property, we know from *Paul v. Davis*, 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976). That leaves the powers of the office. Do I "own" a public office as private "property"?

A position on Gary's Airport Authority is the entitlement to exercise governmental power, to bind the sovereign (that is, one's fellow citizens). Governmental powers are not private property; they do not exist independently of the government; they are not secured against governmental interference. They are aspects of government, integral to it rather than claims against it. An attribute of a state's sovereignty can't sensibly be secured to private hands against governmental deprivation. Cf. *Stone v. Mississippi*, 101 U.S. 814, 820, 25 L.Ed. 1079 (1880) ("[T]he power of governing is a trust committed by the people to the government, no part of which can be granted away.... The contracts which the Constitution protects are those that relate to property rights, not governmental.").

Suppose Indiana had rearranged things so that the Gary Airport Authority had nothing to do, and Mayor Barnes received all of the powers formerly wielded by the Commissioners. Or suppose Mayor Barnes simply found a way around the Authority. In either case the Commissioners' offices would be empty shells. Would we say that eliminating the duties of the office while leaving the Commissioners in place deprived them of property?

Suppose Indiana paid members of the Airport Authority $50,000 per year, and the Mayor fired them with one year to go on their terms. If the "office" is an aspect of property distinct from the stipend, then the remedy should be restoration to office plus back pay. Undoubtedly we would say, however, that the remedy is $50,000, leaving Indiana to choose for itself who shall sit on the Airport Authority. Contracts of employment are not enforced by specific performance. Anyway, if that remedy were available for special jobs (the writ of *quo warranto* may allow these plaintiffs to reclaim their offices), a remedy for breach of contract is not itself "property".

If Indiana fired a Commissioner with a year to go and tendered $50,000, there would be no federal remedy at all. *Royster v. Board of Trustees*, 774 F.2d 618 (4th Cir.1985). A school board fired the superintendent of schools without a hearing but paid the superintendent his full salary for the contract term. He demanded restoration to office, and *Royster* held that there was no property right in the office as opposed to its salary. An Airport Commissioner who draws no salary is in the same position as a school superintendent or football coach who has been paid his full salary: the government has paid him everything due, posing the question whether there is a separate property interest in the office. *Royster* says no, soundly, grounding its decision on constitutional principles independent of the particular terms of Royster's contract. 774 F.2d at 621 & n. 2. An officeholder whose salary is zero is not on that account the holder of a greater interest in the office than is an appointee whose salary has been paid in full. In either case, the money damages are nil, and there is no property interest in the office, as opposed to its emoluments.

Several other lines of authority suggest that no one holds a policy-making office as a private interest enforceable against the state. Consider *Branti v. Finkel*, 445 U.S. 507, 517–20, 100 S.Ct. 1287, 1294–96, 63 L.Ed.2d 574 (1980), and *Elrod v. Burns*, 427 U.S. 347, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976), saying that the government may dispatch policy-making employees on the basis of their speech. Costs to interests secured by the First Amendment, the Court believes, do not justify foisting policymaking officials on unwilling states. *Ambach*

*v. Norwick,* 441 U.S. 68, 99 S.Ct. 1589, 60 L.Ed.2d 49 (1979), holds that states may reserve for citizens positions that entail the execution of discretionary powers of government, a decision showing that the office is not simply the employee's property. *Sampson v. Murray,* 415 U.S. 61, 94 S.Ct. 937, 39 L.Ed.2d 166 (1974), concludes that a court generally should not treat deprivation of public employment as irreparable injury. *Wiener v. United States,* 357 U.S. 349, 78 S.Ct. 1275, 2 L.Ed.2d 1377 (1958), a cousin to our case because it held that the President could not fire a member of the War Claims Commission before the expiration of his term, is revealing because of the remedy: back pay, not restoration to office—a remedy Wiener did not even request. Any of these lines of cases may be distinguished without undue difficulty, but together they show considerable reluctance to treat an opportunity to make policy *on behalf of* the government as something secured *against* the government.

I know of no precedent for the proposition that a policy-making office, as opposed to its stipend, is "property" protected by the Due Process Clauses. My colleagues have not found a case to support them. They cite instead *National League of Cities v. Usery,* 426 U.S. 833, 850–51, 96 S.Ct. 2465, 2473–74, 49 L.Ed.2d 245 (1976), which interprets the Commerce Clause and is irrelevant to our problem. If we are to opine on a subject immaterial to the outcome of this case, we ought to have a basis firmer than an overruled case construing a different part of the Constitution. *Royster* is at odds with the majority's approach; the body of constitutional law is at odds with it. The question is open for initial decision when its resolution affects the outcome.