**BURLINGTON NORTHERN RAILROAD COMPANY, a corporation, et al.,**
Plaintiffs,

v.

**BROTHERHOOD OF MAINTENANCE OF WAY EMPLOYES, et al.,**
Defendants.

No. 92 C 3667.

United States District Court,
N.D. Illinois, E.D.

June 5, 1992.

Thomas J. Knapp, Lawrence M. Stroik, Charles W. Shewmake, Burlington Northern R. Co., Fort Worth, Tex., Kenneth J. Wysoglad, Michael L. Sazdanoff, Kenneth J. Wysoglad & Associates, Chicago, Ill., for plaintiffs.

Robert E. Harrington, Jr., Robert Coster, Robert B. Thompson, Harrington, Thompson, Acker & Harrington, Ltd., Barry M. Bennett, Asher, Gittler, Greenfield, Cohen

& D'Alba, Ltd., Solomon I. Hirsh, Chicago, Ill., for defendants.

## ORDER

ALESIA, District Judge.

Before the court, acting as emergency judge, is the motion of plaintiff, Burlington Northern Railroad Company ("BN"), for a temporary restraining order ("TRO") enjoining defendants, the Brotherhood of Maintenance of Way Employes ("BMWE"), Brotherhood of Locomotive Engineers ("BLE"), Allied Services Division and Brotherhood of Railway Carmen, divisions of Transportation Communications Union ("TCU"), Brotherhood of Railway Signalmen ("BRS"), International Brotherhood of Electrical Workers ("IBEW"), Sheet Metal Workers International Association ("SMWIA"), International Brotherhood of Firemen & Oilers ("IBFO"), International Association of Machinists ("IAM"), International Brotherhood of Boilermakers—Iron Ship Builders—Blacksmiths—Forgers & Helpers ("IBB"), Transportation Communications Union, and United Transportation Union ("UTU") (collectively "defendants"), from engaging in a sympathy strike. We grant the TRO.

## FACTS

The facts are straightforward and not disputed by the parties. Sometime prior to May 26, 1992, BN contracted for services with Coordinated Intermodal Control, Inc. ("CIC") for hostling and other services. In performing its services under the contract, CIC would have approximately 40–45 people at BN's Cicero facility. CIC's employees are represented by Teamsters Local No. 705.

Thereafter, on May 26, 1992, BN terminated its contract with CIC according to the terms of the parties' agreement. At that time, BN directed that CIC would no longer perform services for BN at that facility. As a result, CIC has no offices and no employees at BN's Cicero facility. Subsequently, on May 27, 1992, another contractor, Pacific Rail Services, began performing the services previously provided by CIC. Pacific Rail Services is not owned, controlled or operated by BN. The employees of Pacific Rail Services are not represented by the Teamsters.

On June 3, 1992, persons identified as IBT Local No. 705 members began picketing BN facilities in Cicero at the Cicero Intermodal facility (located between 26th Street and Ogden Avenue), and at BN's Western Avenue Intermodal facility. The picketing occurred in front of both of these facilities, with the apparent objective of encouraging a general strike against BN not only by BN employees, but by all the contractor employees which bring trailers and containers to BN's facilities for rail transportation. Consequently, IBT's strike activities against BN have resulted in BN employees honoring the Teamster's picketing of BN's Cicero facilities and not reporting for work.

## DISCUSSION

In deciding whether a TRO is appropriate, the movant must demonstrate, as a threshold matter, that: "(1) they have no adequate remedy at law; (2) they will suffer irreparable harm if the injunction is not granted; and (3) they have some likelihood of success on the merits in the sense that their 'chances are better than negligible.'" *National People's Action v. Village of Wilmette*, 914 F.2d 1008, 1010 (7th Cir. 1990) (quoting *Roland Machinery Co. v. Dresser Industries, Inc.*, 749 F.2d 380, 386–87 (7th Cir.1984); *Thornton v. Barnes*, 890 F.2d 1380, 1384 (7th Cir.1989). If the movant can meet this threshold burden, the inquiry then becomes a "sliding scale" analysis of the harm to the parties and the public from the grant or denial of the injunction and the actual likelihood of success on the merits. *Thornton v. Barnes*, 890 F.2d at 1384. In particular, and keeping in mind that the public interest may become important in a given case, the more likely the plaintiff is to win, the less heavily need the balance of harms weigh in its favor in order to get the injunction; the less likely plaintiff is to win, the more need it weigh in its favor. *Thornton v. Barnes*, 890 F.2d at 1384. After careful consideration of the pleadings, entertaining oral ar-

gument from counsel for plaintiff and defendants on June 4, 1992, and independently researching the legal issues, we conclude that plaintiff has satisfied each of these elements.

■] As an initial matter, we have considered and reject defendants' argument that the Norris–LaGuardia Act ("NLGA"), 29 U.S.C. §§ 101–115 *et seq.* and the Supreme Court's opinion in *Buffalo Forge Co. v. United Steelworkers of America,* 428 U.S. 397, 96 S.Ct. 3141, 49 L.Ed.2d 1022 (1976), deprive this court of jurisdiction to issue an injunction. We are satisfied that the Railway Labor Act ("RLA") controls in this situation. In fact, the Supreme Court in *Burlington Northern Railroad Co. v. Brotherhood of Maintenance of Way Employes,* 481 U.S. 429, 107 S.Ct. 1841, 95 L.Ed.2d 381 (1987), expressly recognized that the NLGA does not bar federal courts from issuing injunctions to enforce the requirements of the RLA. *See also Long Island Railroad Co. v. Int'l Ass'n of Machinists,* 874 F.2d 901, 909 (2d Cir.1989), *cert. denied,* 493 U.S. 1042, 110 S.Ct. 836, 107 L.Ed.2d 831 (1990); *Southeastern Pennsylvania Transportation Authority v. Brotherhood of Railway Signalmen,* 882 F.2d 778, 789 (3d Cir.1989), *cert. denied,* 493 U.S. 1044, 110 S.Ct. 840, 107 L.Ed.2d 835 (1990). Therefore, we find that the NLGA may not be read alone in matters dealing with railway labor disputes. In our view, there must be an accommodation of the NLGA, and the RLA, so that the purpose of the RLA is preserved.

The RLA is designed to prevent the disruption of the nation's rail service by providing for the "prompt and orderly settlement" of disputes between labor and management "growing out of grievances or out of the interpretation or application of agreements covering rates of pay, rules, or working conditions." 45 U.S.C. § 151a. By its terms, the RLA sets forth an arbitration and mediation process designed to settle all "major" and "minor" disputes between a carrier and its employees. Based on our interpretation of relevant case law, and the facts as presented to us

by counsel, we are satisfied that the issue raised in this case is a minor dispute.

■] A minor dispute "relates either to the meaning or proper application of a particular provision in a collective bargaining agreement with reference to a specific situation or to an omitted case." *Southeastern Pennsylvania Transportation Authority,* 882 F.2d at 782. Minor disputes are subject to arbitration before the National Railroad Adjustment Board. 45 U.S.C. § 153 (1982). In our opinion, the parties are essentially disputing whether the applicable collective bargaining agreements allow sympathy strikes. It is undisputed that the collective bargaining agreements are silent on this point. The agreements do not contain a "no-strike" clause. Clearly, the proper interpretation of a collective bargaining agreement is a minor dispute under the RLA. *See, e.g., Chicago & Northwestern Transportation Corp. v. United Transportation Union,* 656 F.2d 274, 278 (7th Cir.1981) ("Minor disputes ... are controversies over the meaning of an existing collective bargaining agreement ... it involves the interpretation or application of the already existing agreement."); *Missouri Pacific Railroad Co. v. United Transportation Union,* 782 F.2d 107, 111 (8th Cir.1986) (a minor dispute involves the meaning of an existing collective bargaining agreement). We conclude that whether the collective bargaining agreements allow sympathy strikes is a minor dispute within the meaning of the RLA.

■ Having made this determination, we now address whether a TRO should issue pending mediation. The issuance of a TRO in this case is appropriate. *See Long Island Railroad Co. v. Int'l Ass'n of Machinists,* 874 F.2d 901 (2d Cir.1989) (sympathy strike enjoined under the RLA notwithstanding absence of "no strike" clause in the collective bargaining agreement); *Southeastern Pennsylvania Transportation Authority v. Brotherhood of Railway Signalmen,* 882 F.2d 778 (3d Cir.1989) (sympathy strike enjoinable under minor dispute resolution procedures of RLA); *Northwest Airlines, Inc. v. Air Line Pilots Ass'n, Int'l,* 442 F.2d 251 (8th Cir.1971),

747

*aff'd on rehearing,* 442 F.2d 251 (8th Cir.) (same); *Chicago & Illinois Midland Railway Co. v. Brotherhood of Railroad Trainmen,* 315 F.2d 771 (7th Cir.) (sympathy strike enjoinable where no effort made to comply with minor dispute resolution procedures of RLA), *vacated as moot,* 375 U.S. 18, 84 S.Ct. 61, 11 L.Ed.2d 39 (1963). *Cf. Chicago & North Western Transportation Co. v. Railway Labor Executives' Ass'n,* 908 F.2d 144 (7th Cir.1990).

Irreparable harm will result to BN because large amounts of the traffic and train transportation business now held and enjoyed by BN will be diverted to other transportation agencies and may be permanently lost to BN for the reason that it will be unable to provide the customary and usual service to its customers. Any loss of business occasioned by the sympathy strike and defendants' refusal to work is difficult to quantify in monetary terms. Thus, the court concludes that BN does not have an adequate remedy at law and that BN will suffer irreparable harm if the TRO is not granted.

In addition, we agree with BN that the shipping public will be greatly inconvenienced and injured by reason of BN's being rendered incapable of performing its usual and customary services to the public. We believe there is a considerable public interest in keeping a major rail carrier, such as BN, operational. Moreover, in balancing the harms to the parties, the TRO will not cause harm to defendants. The defendants will not be economically harmed because they have no economic stake in the unrelated labor dispute between IBT Local 705 and CIC. The balance of the harms to the parties and the public clearly favors the granting of the TRO.

Lastly, in light of our discussion regarding the RLA, we believe that there is a likelihood of success on the merits. After careful consideration of the facts in light of the factors relevant to the issuance of a TRO, the court holds that BN is entitled to a TRO to maintain the status quo until the hearing for a preliminary injunction is held on June 15, 1992 at 10:00 a.m. The parties are ordered to submit a draft order by 2:00 p.m. today. The court's order dated June 4, 1992, directing the parties to address the applicability of the NLGA and *Buffalo Forge* is vacated as moot. It is so ordered.