William P. JUNGELS,
Plaintiff-Appellant,

v.

David PIERCE, in his official capacity as Mayor of the City of Aurora, and City of Aurora, Defendants-Appellees.

No. 86–2504.

United States Court of Appeals,
Seventh Circuit.

Argued April 13, 1987.

Decided July 14, 1987.

1128

Mark Stein, Asst. Public Defender, Appeals Div., Chicago, for plaintiff-appellant.

Michael B. Weinstein, City of Aurora, Law Dept., Aurora, for defendants-appellees.

Before BAUER, Chief Judge, POSNER, Circuit Judge, and FAIRCHILD, Senior Circuit Judge.

POSNER, Circuit Judge.

█ William Jungels was a member of the Civil Service Commission of Aurora, Illinois. His term was not due to run out until December 1987. On November 25, 1985, the Aurora *Beacon News* published the following letter from Jungels, under the headline, "Others Have Needs, Too":

Editor, The Beacon-News:

Who are the grass roots?

After reading the article in Sunday's (Nov. 10) newspaper on Hispanics planning for a better future in Aurora, I'm left with some doubt as to who our Chamber of Commerce (who paid for a weekend conference of Hispanic leaders in Lake Geneva to try to gain a better understanding of problems in Aurora) has more concern for, the people who have lived in Aurora all their lives and made this city grow to where it is today or the minorities who are moving into this area and slowly deteriorating our neighborhoods and forcing people out of Aurora.

I strongly believe our Hispanic leaders do have a concern for their community problems, but some of our founding families also have problems, one being our kids having a place to go.

Years ago, we had places like the C.Y.A. dances at the Knights of Columbus, the Tom-A-Hawk Club and the Y.M.C.A. I don't see the Chamber of Commerce or, as far as that goes, the City of Aurora trying to help out some of the originals in this town.

Our kids need some type of teen club in town to give them something to do on the weekends instead of driving around or hanging out at various pizza places in the area looking for something to happen. I don't see any special funding for what I have talked about, but I read a lot about funding for various things the Hispanic community wants.

The last paragraph of Sunday's article talks about this conference as an example of grass roots. Well, I'll tell you, the grass roots were the parents and grandparents of the people of this community who have lived here all their life, not the ones who have only been here for a short period of time.

Give us a break.

William Jungels
Aurora

Two days later the mayor of Aurora fired Jungels, who then brought this suit against the mayor and city under 42 U.S.C. § 1983, charging that the firing (1) deprived him of a property right (in his position as civil service commissioner) without due process of law, (2) deprived him of liberty, because of the stigmatizing nature of the dismissal, and (3) penalized him for the exercise of his right of free speech. Actually there is one defendant—the city—not two; for the complaint names the mayor as a defendant in his official capacity only, which is the equivalent of suing the city. *Brandon v. Holt*, 469 U.S. 464, 471–73, 105 S.Ct. 873, 877–79, 83 L.Ed.2d 878 (1985); *Kentucky v. Graham*, 473 U.S. 159, 165–67, 105 S.Ct. 3099, 3105–06, 87 L.Ed.2d 114 (1985). This makes no practical difference; the city is liable for the official actions of its senior policy-making official. See *id.* at 167 n. 14, 105 S.Ct. at 3106 n. 14; *Pembaur v. City of Cincinnati*, 475 U.S. 469, 106 S.Ct. 1292, 1298–99, 89 L.Ed.2d 452 (1986). But nothing was added by suing the mayor in his official capacity.

The defendants filed a motion to dismiss the complaint for failure to state a claim upon which relief can be granted. To their motion they attached the letter to the *Beacon News*—the authenticity of which letter Jungels does not contest—plus minutes of the meeting of the city council in which it was resolved to fire him and the letter

firing him. Jungels did not concede the accuracy or even authenticity of the minutes or letter of dismissal and the defendants made no effort by affidavit or otherwise to give them the status of legally admissible evidence. The district judge, although agreeing that Jungels had been deprived of a property right without a hearing, granted the motion to dismiss, 638 F.Supp. 317 (N.D.Ill.1986).

The suit seems threadbare, but we are constrained to hold that, with the exception of the charge of a stigmatizing discharge, it was dismissed prematurely.

■ 1. The Supreme Court has held that the interest which a public employee has in his job is property within the meaning of the due process clauses of the Fifth and Fourteenth Amendments if he has tenure rights in the job—that is, if he can be fired only for misconduct. If he has tenure in this sense, and therefore a property interest in his job, he cannot be fired constitutionally unless he is given the rudiments of fair procedure. See, e.g., *Cleveland Bd. of Education v. Loudermill*, 470 U.S. 532, 538–41, 545–46, 105 S.Ct. 1487, 1495–96, 84 L.Ed.2d 494 (1985); *Patkus v. Sangamon-Cass Consortium*, 769 F.2d 1251, 1265 (7th Cir.1985). These Jungels did not receive.

■ This court has extended the concept of tenured employment to the case of employment for a fixed (rather than indefinite) period terminable only for cause. See, e.g., *Vail v. Board of Education*, 706 F.2d 1435 (7th Cir.1983), aff'd by equally divided Court, 466 U.S. 377, 104 S.Ct. 2144, 80 L.Ed.2d 377 (1984). The present case, however, is unusual in that Jungels' job as civil service commissioner was strictly part-time, his only compensation being (we were told at argument) a fee of $40–$50 per meeting—and meetings are held only about twice a month. The defendants argued in the district court that the interest in a job essentially honorific does not have the dignity of constitutional property. This is an appealing argument but one the defendants mention only in passing in this court. We do not consider arguments that are raised but not developed. See, e.g., *Hershinow v.*

*Bonamarte*, 735 F.2d 264, 266 (7th Cir. 1984).

The defendants press a little harder the suggestion that the fixed term of Jungels' employment as civil service commissioner was illusory because the mayor could remove him essentially at will. The relevant statute and ordinances allow the mayor, "in his discretion, [to] remove any commissioner for incompetence, neglect of duty or malfeasance in office." Aurora Code of Ordinances § 2–90 (1985); Ill.Rev.Stat. ch. 24, ¶ 10–1–2. Even without the words "in his discretion," it could be argued, by analogy to the statute construed in *Adams v. Walker*, 492 F.2d 1003 (7th Cir.1974) (a case growing out of the removal by the Governor of Illinois of a member of the Illinois Liquor Control Commission), that the mayor's power of removal is plenary; and the words strengthen the argument. If the overall effect is to give the mayor an unreviewable discretion to remove commissioners, then they really do serve at the will of the mayor.

■ No court has construed the particular statute or ordinance in issue here, and their meaning is unclear; for in opposition to the interpretation suggested in the preceding paragraph, we point out that the reference to the mayor's discretion may mean no more than that he may, but does not have to, fire an employee who gives cause to be fired. Practice under the enactments may be the key to their meaning but no evidence on that practice was submitted—no evidence was submitted, period, except for the letter to the *Beacon News*. Although the views of the district judge on the law of the state in which he sits are highly pertinent, see, e.g., *Beard v. J.I. Case Co.*, 823 F.2d 1095, 1098 (7th Cir. 1987); *Moore v. Tandy Corp.*, 819 F.2d 820, 823 (7th Cir.1987), and Judge Bua did conclude that Jungels had a property interest in his post as civil service commissioner, the judge's analysis was perfunctory. He did not discuss, and may not even have noticed, the statute's reference to mayoral discretion. The judge dismissed the due process claim on the sole ground that the mayor's interest in protecting the civil ser-

vice of Aurora from the legal troubles that it might get into if one of the commissioners was believed to be prejudiced against Hispanics outweighed Jungels' interest in being allowed to express himself publicly on matters of public concern. This analysis improperly merges the due process issue—was Jungels given adequate procedural safeguards in connection with his dismissal?—with the First Amendment issue, of which more later. Maybe the city could fire Jungels without violating the First Amendment, but it doesn't follow that it could escape liability under the due process clause if it fired him without notice and an opportunity for some kind of hearing on his fitness to continue in office notwithstanding his letter to the Aurora *Beacon News.*

▆▆▆ 2. We agree with the judge, however, that the complaint fails to state a claim that the dismissal so stigmatized Jungels as unfit for employment in a job of comparable responsibility that it deprived him of his liberty of occupation. The principle behind the "stigma" cases is not that particularly aggravated forms of defamation violate the due process clause when committed by public officials, but that dismissal to the accompaniment of serious public charges of misconduct may prevent the employee from obtaining other employment of comparable responsibility—may, in a word, operate to blacklist him from such employment, thereby depriving him of his occupational liberty. See, e.g., *Colaizzi v. Walker,* 812 F.2d 304, 307 (7th Cir.1987). The principle does not reach a case where the employee is fired from a part-time, honorific job while retaining the employment that gives him his livelihood. Maybe Jungels will find it impossible in the future to obtain an appointment as a part-time city commissioner, but, if so, we cannot believe that such a minor deprivation would be a deprivation of occupational liberty. We derive support for this conclusion from cases holding that lateral transfers involving minor diminutions in perquisites or opportunities, and other employment actions that impose only slight costs on the employee, are not actionable under the "stigma" line of cases. See, e.g., *Mosrie v. Barry,* 718 F.2d 1151, 1161–62 (D.C.

Cir.1983); *Altman v. Hurst,* 734 F.2d 1240, 1243 (7th Cir.1984) (per curiam); *Carter v. Western Reserve Psychiatric Habilitation Center,* 767 F.2d 270, 272 n. 1 (6th Cir. 1985) (per curiam).

▆▆▆ 3. The last issue is whether the judge was right to dismiss Jungels' First Amendment claim, which is based on *Pickering v. Board of Education,* 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968). We think not. The letter published in the *Beacon News* was a statement of opinion on a matter of public concern, and thus was prima facie protected by the First Amendment. That it could be read as expressing a point of view that nowadays is not only unfashionable but offensive did not impair its protected status: a principle dramatically reaffirmed by the Supreme Court in *Rankin v. McPherson,* — U.S. —, 107 S.Ct. 2891, 97 L.Ed.2d 315 (1987). There an employee in a county constable's office was fired for remarking to a co-worker, after hearing of William Hinckley's attempt to assassinate President Reagan, "If they go for him again, I hope they get him." The Court held that the firing violated the employee's rights under the First Amendment.

▆▆▆ It is true that a public employee does not have an absolute right to speak out on matters of public concern yet keep his job. If what he says interferes unduly with the mission of his employer, the employer can fire him. See, e.g., *Pickering v. Board of Education, supra,* 391 U.S. at 568, 88 S.Ct. at 1734; *Connick v. Myers,* 461 U.S. 138, 150–54, 103 S.Ct. 1684, 1691–94, 75 L.Ed.2d 708 (1983). Judge Bua thought this the case here, but he had no evidence. He said: "The Court finds that Jungels' ability to fairly execute his duties as Commissioner and the public's perception of him were substantially undermined by his letter to the Aurora Beacon News," and that "as a result of the contents of the letter and the public position held by its author, the City of Aurora could conceivably be liable for legal action every time a Hispanic was discharged or denied a position with the City. This could cause major

disruption to municipal employment operations. In light of this substantial showing of disruption to the City's Civil Service Commission, Jungels' letter does provide a proper basis for his discharge." All this is speculation, and not all of it is plausible speculation. No evidence was presented concerning public perceptions and their impact, if any, on Jungels' ability to perform his duties as a civil service commissioner. No evidence was presented concerning "major disruption to municipal employment operations." No "substantial showing"— no showing of any sort—of disruption of the Civil Service Commission's operations was made. It was an exaggeration to suggest that the city might be liable for discrimination *every time* it discharged a Hispanic or denied a Hispanic a job, merely because a civil service commissioner had written a letter criticizing Hispanics. The plaintiff in such a suit would still have to show a causal connection between that hostility and his discharge or denial of a job, and though the letter might be a powerful bit of evidence with a jury, it would not be conclusive.

Granted, in a city with a substantial Hispanic population (which Aurora is, we were told at argument) it is plausible that a civil service commissioner's writing a letter to the local newspaper that could be construed as expressing hostility to Hispanics might make it difficult or even impossible for the city to maintain the trust of its Hispanic civil servants or residents; an uncontradicted affidavit to this effect might thus have provided a sufficient basis for granting a motion for summary judgment. But no affidavits were submitted. The only evidence in the case is Jungels' letter, which is not enough to show that his First Amendment claim is groundless. Cf. *Ohse v. Hughes*, 816 F.2d 1144, 1150–53 (7th Cir.1987).

■ A further possibility, not explored by the parties, is that a civil service commissioner's job is a policy-making job, from which the incumbent can be ejected on political grounds without raising questions under the First Amendment. See *Elrod v. Burns*, 427 U.S. 347, 367–68, 96 S.Ct. 2673,

2686–87, 49 L.Ed.2d 547 (1976); *Shondel v. McDermott*, 775 F.2d 859, 863–64 (7th Cir. 1985). If so, maybe the next analytic step can be taken, and the grounds of Jungels' dismissal be described as political. These are issues to be explored on remand, unless waived.

The dismissal of Count III (stigma) is affirmed. Otherwise the judgment is reversed and the case remanded for further proceedings consistent with this opinion. Circuit Rule 36 shall apply on remand.

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.