**John F. KENNEDY, Plaintiff,**

v.

**William E. McCARTY, an individual, and the City of Franklin, Indiana, Defendants.**

**No. IP 90–228–C.**

United States District Court, S.D. Indiana, Indianapolis Division.

Nov. 25, 1991.

John Emry, Franklin, Ind., for plaintiff.

James R. Acher, Franklin, Ind., Richard S. Ewing, Rebekah F. Pierson, Stewart & Irwin, Indianapolis, Ind., for defendants.

ENTRY ON CROSS-MOTIONS FOR SUMMARY JUDGMENT

TINDER, District Judge.

I. *Introduction*

This case appears to be about principle. It is surely not about money. The plaintiff is seeking reinstatement to a job that paid $1.00 a year.[1] The justiciable principles identified by the plaintiff are the constitutional right to due process before the state may take liberty or property, the constitutional right to free speech and to petition the government for redress of grievances and various related state law claims. The complaint, however, also makes it evident that there is another principle that the plaintiff wants to stand up for, although he cannot recover on this basis—more about that later.

Both parties have moved for summary judgment—the plaintiff as to all aspects of his claims that the defendants are liable and the defendants on liability for the plaintiff's property interest and liberty interest claims, on the plaintiff's claim for punitive damages and on the basis of Indiana's governmental immunity statute. In addition, the plaintiff has moved to strike an affidavit and certain exhibits attached to defendants' motions. Finally, in their reply brief on their summary judgment brief the defendants raised for the first time the question of the applicability of the tort claims notice requirement imposed by Indiana statute. On October 24, 1991 a hearing was held on these motions. This entry resolves the outstanding motions between the parties.[2]

II. *Factual Summary*

John F. Kennedy, the plaintiff in this case, was a police reserve in the Franklin, Indiana police department from October 1982 through February 14, 1990. As a reserve in the police department Kennedy did not receive a salary per se. In fact, the only tangible remuneration that he received was $1.00 a year and a $99 uniform allowance. Kennedy "volunteered" his services hoping "that he would be able to move from part-time as a reserve police officer to full-time as a regular police officer when a position opened up." First Amended Complaint at 4.

1. The complaint also seeks punitive damages and attorneys fees but the tenor of the complaint and pleadings of the plaintiff make it quite clear that he is operating out of a sense of noblesse oblige.

2. As a hearing was held on these motions and improper evidence was not considered by this court in reaching the rulings set forth below, the plaintiff's Motion To Strike Affidavit and Exhibits (filed October 1, 1990) will be DENIED as moot.

Kennedy was given some responsibility in the reserve section of the department. He was named the reserve commander, and in that capacity was over the other reserves on the police force. Nevertheless, although Kennedy felt that "[b]ecause of his seven years investment as a reserve police officer, [he] had a *vested interest* in his position in line for a job as a full time police officer," First Amended Complaint at 7 (emphasis added), his hopes have not come to fruition. Kennedy has not been appointed to the full time police force.

On February 15, 1990 Kennedy was abruptly terminated from his position by William E. McCarty, the Franklin Chief of Police. Kennedy's termination came after what appears to have been some months of turmoil within the department. There is little actual evidence before the court at this time that would indicate what the disputes within the department were about, nor is such evidence relevant to the issues before this court. However, the fact that the plaintiff here has seen fit to clutter his complaint with over ten pages of irrelevant and often trivial accusations against the chief of police [3] leads this court to suspect that Kennedy was not Chief McCarty's biggest cheerleader.

In any case, the relationship between Kennedy and McCarty reached a breaking point during the days of Sunday, February 14 and Monday, February 15, 1990. On Sunday, February 14, Kennedy placed a phone call to Chief McCarty at the latter's home, but the purpose of the call was not to transmit a Valentines Day greeting. Rather, Kennedy wanted to know if the Chief had approved of a letter to the editor of the local newspaper, written by three reserve officers, that was supportive of the police department and which criticized unfavorable coverage of the department in the local paper.

When Kennedy found out that the letter had not been approved but that the Chief did not feel that the letter violated any departmental rules, Kennedy asked if he could write a more critical letter to the editor. Kennedy asserts that Chief McCarty said no. However, McCarty agreed to meet with Kennedy the following afternoon. Apparently, this impasse emboldened Kennedy to be willing to bring his criticisms to the attention of the mayor, because later that day or early the next Kennedy delivered a memorandum to his shift commander [4] which stated simply:

> I REQUEST PERMISSION TO SEE MAYOR ED TEETS. REFERENCE THE POOR MORALE PROBLEM OF THE FRANKLIN POLICE DEPARTMENT. FOR WHICH I BELIEVE POLICE CHIEF WILLIAM McCARTY IS RESPONSIBLE
>
> SGT John Kennedy

Pursuant to departmental policy this memorandum was delivered to the Chief of Police.

Kennedy's commitment to openness, however, did not engender tranquility. On the day after Kennedy's Valentines Day call Chief McCarty was seeing red. By that time, the Chief had received the memorandum Kennedy had prepared. At their afternoon meeting the Chief asked Kennedy if he was the author of the memorandum. Kennedy's acknowledgment prompt-

3. Plaintiff's First Amended Complaint accuses the Franklin Chief of Police of conduct such as: only giving Christmas gifts to two employees in the police department, refusing requests to obtain a stapler and a two hole punch for department business, having a new door put on his office, not immediately fixing lights that had gone out in a police detective's car, stating that there was no money for new tires for department cars and subsequently having new whitewalls put on his car, getting into public arguments, and losing his temper. This court lists these allegations not to give them credence nor to deny their veracity but to illustrate how far afield and irrelevant to the case are many of the plaintiff's allegations and to emphasize for all who read this opinion that these assertions are entitled to no greater belief merely because they have been contained in the pleadings of a lawsuit. The question of whether these matters should have been included in the complaint is discussed in the final section of this entry.

4. The memorandum reproduced in this opinion was dated 1–28–90 and was never delivered, however, Kennedy has attested that the memorandum is similar to the one that he delivered over two weeks later after the phone call between Kennedy and McCarty. *See* First Amended Complaint at 11.

ed McCarty to give Kennedy his pink slip, which was in the form of a terse letter:

February 15, 1990

John F. Kennedy

Franklin Police Department

PE# R12

Dear Sir:

As Chief of the Franklin City Police Department, I hereby terminate your status as Reserve Officer for the police department, effective immediately.

Yours Truly,

/s/ William E. McCarty

William E. McCarty

Chief of Police

Franklin Police Department

cc; file

Board of Public Works and Safety

Less than two weeks after he was dismissed Kennedy appealed his termination and sought his reinstatement at a meeting of the Franklin Board of Public Works and Safety (the "Board" or the "Safety Board"). *See* City of Franklin, Board of Public Works & Safety, Minutes February 27, 1990 (Pl.Exh. D-3). The Board took no action on his request. This suit followed.

III. *Discussion*

A. Property or Liberty Interest

The starting point in analyzing Mr. Kennedy's due process claim is determining whether Mr. Kennedy lost property or liberty, for if he did not lose any property or liberty he was not entitled to any process. From his complaint this court is able to gather that Mr. Kennedy believes he has been unconstitutionally deprived of four things:

1. a vested interest in remaining on the police force in a reserve capacity in order that he might be in line for any full time jobs on the force that might open up,
2. $1.00 a year payment for his services,
3. a $99 a year clothing allowance,[5] and
4. a liberty interest in his reputation that was affected by Chief McCarty's comments regarding his decision to fire Kennedy.

Each of these asserted interests will be discussed in turn.

1. *Property interest*

a. Creation by state statute

Mr. Kennedy's first claimed deprivation of property is easily disposed of. "[T]o have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must instead, have a legitimate claim of entitlement to it." *Board of Regents v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972). Mr. Kennedy did not have a property interest in his claimed "vested" interest in maintaining his reserve position in order that he might later become a full time officer because Kennedy only had a unilateral expectation or "hope" that he might attain a full time position.

Mr. Kennedy can point to no statute, ordinance, departmental regulation or private agreement that turns his hope into a legitimate claim of entitlement. The past practice of some reserve officers later becoming full time officers is not enough to give Kennedy a property interest. The Board of Public Works and Safety is the ultimate appointing authority for police officers in the City of Franklin, Indiana, and save their appointment, Kennedy's "vested interest" in eventual full time employment was no more than a chance, a mere possibility that what he hoped for—would one day come true.

The next property interest Kennedy claims he has been deprived of is entitlement to $1.00 a year for performing the services of a reserve officer. This court maintains little doubt that, despite its ever diminishing buying power, $1.00 is property in every sense of the word. But, Kennedy has a property interest in that dollar a year only if he has a legitimate claim of

5. There is some evidence that reserve officers in the Franklin Police Department no longer receive a clothing allowance. *See* Pl.Exh. K at 2 (Statement of John Emery).

entitlement to it.[6] The interest that a public employee has in his job is property only if the employee "has tenure rights in the job—that is, if he can be fired only for misconduct." *Jungels v. Pierce,* 825 F.2d 1127, 1130 (7th Cir.1987); *accord Thornton v. Barnes,* 890 F.2d 1380, 1386 (7th Cir. 1989).

Whether Kennedy could be fired only for misconduct is a question of state law. *See Thornton,* 890 F.2d at 1386–87 ("In order to ascertain whether employees have a 'protectible property interest,' we must turn to the applicable state law ..."). Kennedy points to two sources as the genesis for his alleged property interest in his public employment: an Indiana statute a and a local ordinance.

The Indiana statute relied upon by Kennedy is Ind.Code § 36–8–3–4(b).[7] *See* Plaintiff's Brief in Support of His Motion for Partial Summary Judgment (filed April 17, 1990) at 3. Kennedy contends that this provision specifies that "a member [of an Indiana police force] can be dismissed only for cause." *Id.* This provision provides, in part, that:

> a member of the police or fire department holds office or grade until he is dismissed or demoted by the safety board. A member may be disciplined by demotion, dismissal, reprimand, forfeiture, or suspension upon either:
>
> (1) Conviction in any court of any crime; or
>
> (2) A finding and decision of the safety board that the member has been or is guilty of any one [1] or more of the following:
>
> (A) Neglect of duty.
>
> (B) A violation of rules.
>
> (C) Neglect or disobedience of orders.
>
> (D) Incapacity.
>
> (E) Absence without leave.
>
> (F) Immoral conduct.
>
> (G) Conduct injurious to the public peace or welfare.
>
> (H) Conduct unbecoming an officer.
>
> (I) Another breach of discipline.
>
> The safety board may not consider the political affiliation of the member in making a decision under this section.

Ind.Code § 36–8–3–4(b) (hereafter described also as the "safety board statute"). The statute goes on to describe an intricate appeal process for "member[s] who [are] suspended for a period exceeding ten [10] days, demoted, or dismissed." Ind. Code § 36–8–3–4(e). This appeals process would be completely superfluous were there not a standard against which to judge the safety board's decision to discipline or dismiss an officer. For this reason, this court concludes that "members" of a police department may be terminated only for cause and, therefore, enjoy a protectible property interest in their continued employment with their police department. *But see Phegley v. Indiana Dept. of Highways,* 564 N.E.2d 291, 295 (Ind.Ct.App.1990) (holding that statutory procedure requiring judicial review for a demotion or dismissal did not require cause for termination, did not create a protectible property interest and "[a]t most ... bestow[ed] upon [the plaintiff] the right to have his demotion reviewed").

The obvious next step for this court is to ascertain whether John F. Kennedy was a "member" of the Franklin Police Depart-

6. Because this court finds that $1.00 is property it would be pointless at this stage to discuss whether Mr. Kennedy's uniform allowance is property as well. If the single dollar is property this court believes that it is protected by the due process clause if Mr. Kennedy had a legitimate claim of entitlement to it. It is to this question that this court now turns.

7. For the purpose of these summary judgment motions this court concludes that it is bound to find that City of Franklin, Indiana is bound by the provisions of Ind.Code § 36–8–3–4 because the defendants have not argued that this statute is inapplicable to them. Franklin has not contended that Ind.Code § 36–8–3–5 (which makes section four inapplicable in certain instances) renders Ind.Code § 36–8–3–4 inapplicable as to them. In response to a summary judgment motion the non-moving party is under an obligation to produce evidence that there is a genuine issue for trial. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986).

ment within the meaning of Ind.Code § 36–8–3–4. One might hope to be able to arrive at the proper answer merely by locating the definition of "member" in the Indiana Code. This was a decidedly unhelpful exercise, however, as Ind.Code § 36–8–1–9 merely states rather opaquely that " 'Member of the police department' means the police chief or a police officer appointed to the department." Little comfort can be found in this definition both because, despite its apparent clear applicability to police chiefs, police chiefs have been held not to be "members" in certain instances—leading one to question the utility of the definition, and because the statutory definition merely substitutes the term "member" for the undefined appellation "police officer"—a label that is not used again in the sections of the Indiana Code at issue in this case.

Plaintiff, of course, contends that a "reserve member" of a police department is covered by the "member of the police or fire department" to which Ind.Code § 36–8–3–4 applies. *See* Plaintiff's Brief in Support at 3–8. The plaintiff bases his argument primarily on an interpretation of Ind. Code § 36–8–3–20, the Indiana Code section authorizing the appointment of "[p]olice reserves ... by the same authority that appoints regular members of the department."

Kennedy contends that the statutory scheme provides for "regular members" of the police department and for "reserve members" of the police department. *See* Plaintiff's Brief in Support at 5. The statute, however, never uses the term "reserve *member*," but instead describes only "police reserves." Ind.Code § 36–8–3–20. There is no affirmative legislative direction that "police reserves" are "members" of the police department entitled to the protections of Ind.Code § 36–8–3–4.

Moreover, this court believes that the difference pointed out by plaintiff between the statute providing for safety boards (Ind.Code § 36–8–3–4) and the statute providing for merit boards (Ind.Code § 36–8–3.5–17), *see* Plaintiff's Brief in Support at 5–6, cuts against the plaintiff. The safety board statute expressly affords protection to "members" of a police department. The first section of the merit board statute, however, uses the term "regular member" to describe the officers to which that statute applies. Plaintiff elevates this difference to a distinction with meaning, contending that it means that the safety board statute confers broader protection than the merit board statute, i.e., protection extending to all members of the department—not just "regular members."

A thorough reading of the merit board statute, however, reveals that the term "regular member" is used only once in that statute but the term "member" or its plural—"members" is used as a synonym for the opening reference to "regular member" thirteen times. Thus, if anything can be gained from the comparison it is that the terms "member" and "regular member" as used in the Indiana Code sections relating to police officer discipline are synonymous.

Other statutory provisions also support the conclusion that police reserves are not encompassed within the statutory definition of "members" of a police department. For example, Ind.Code § 36–8–3–20(c) specifies that, "[p]olice reserves shall be appointed by the same authority that appoints regular members of the department." Indiana Code § 36–8–3–3(c), however, states, in part, that, "[t]he safety board shall appoint: ... [t]he members and other employees of the police department ..," suggesting both that the terms "members" and "regular members" are synonymous and that they do not encompass the term "police reserves"—if the term "members" included "police reserves" the reference to the appointing authority in Ind.Code § 36–8–3–20(c) would be redundant.

Indiana Code § 36–8–3–21(b) also states that, "[a]n individual may not be employed ... as a member ... of the unit's police department unless the individual meets the conditions for membership in the 1977 [pension] fund." A police reserve could never meet the conditions for membership in the 1977 pension fund because "[p]olice reserves are not eligible to participate in any pension program provided for regular

members of the department." Ind.Code § 36-8-3-20(g). This is not to say that the statute makes it clear that for all purposes police reserves are not to be considered "members" of a police department; it is to say, however, that the statute is not plain and unambiguous in this regard.

But this court must reach a determination on this question of law in order to resolve this case. This court looks to policy and an analogous case for insight.

There are policy reasons that may have supported a legislative determination that police reserves do not need to receive the protections of notice and a hearing prior to termination. Obviously, it is not generally in the economic interest of municipalities to increase the number of employees who are dischargeable only for cause. Employees who are immunized from firing except for cause may not be treated summarily and, an incorrect employment decision can result in attorneys fees, potential damages and disruption in the daily work routine of the supervisor who made the firing decision. Moreover, even a firing for good cause can result in many of these same expenses, as the possibility for litigation remains very real even if the city has cause for the termination. These costs and the attendant stultifying effect on decisionmaking are part of what is behind the common law rule in Indiana that an employee serves his employer "at will" unless clear contractual terms or a statute say otherwise. *See, e.g., Rice v. Grant County Bd. of Commissioners,* 472 N.E.2d 213, 214 (Ind.Ct.App. 1984) (employee may be terminated without cause "if the tenure of employment is indefinite or cannot be determined from the terms of the contract").

Moreover, without denigrating the value of Mr. Kennedy's contribution to law enforcement in the City of Franklin, it takes little insight to conclude that in a very real sense he and police reserves like him are volunteers. Police reserves provide services far beyond the ability of city governments to compensate them. However, it is the rare instance indeed when a typical volunteer can force the organization receiving his/her services to continue to accept them. In this case, as in the case of any police reserve, the cost to prosecute the deprivation claim far exceeds the value of the deprivation. While the small amount of property for which Mr. Kennedy claims a protection is no reason not to protect it, it may reflect on the likelihood that the legislature intended it to be protected.

Finally, this court turns to *Delaney v. Carmichael,* 670 F.Supp. 255 (S.D.Ind. 1987). In *Delaney,* on facts somewhat similar to this case, Judge Barker of this district ruled that,

> the fact that the Code expressly requires that reserve police officers only be *appointed*—but not *removed*—by the same authority as regular police officers (*see* I.C. § 36-8-3-20), combined with the fact that § 36-8-10-11 [a section similar to Ind.Code § 36-8-3-4, requiring cause for termination of county police officers and establishing a review procedure from the decision of a merit board to terminate an officer] refers *only* to "county police officer" and not to "police reserves" "implies" that the state legislature had every intention of *excluding* reserve police officers from the procedural protections of I.C. § 36-8-10-11.

*Delaney,* 670 F.Supp. at 258 (emphasis original).

Similarly, the statute under which Kennedy seeks to find protection (Ind.Code § 36-8-3-4) refers only to "members" of the police department and not to "police reserves." While this court is not bound by Judge Barker's reasoning, that reasoning is coherent and logical and this court finds it applicable to this case. This court will not extend a termination for cause provision of a statute not expressly applicable to police reserves where there is *no* legislative indication that police reserves were to be terminated only for cause. This court believes that this decision to follow Indiana's standard practice of at will employment is both the course likely to be followed by Indiana courts interpreting the Indiana statutes, *see, e.g., Phegley,* 564 N.E.2d at 295 and the better practice, *see, e.g., Northern Indiana Public Serv. Co. v. Citizens Action Coalition,* 548 N.E.2d 153,

159 (Ind.1989) (legislative deviations from the common law must be expressly declared or unmistakably implied).[8]

Because police reserves are not protected by state statute from terminations at will Mr. Kennedy cannot have a protectible property interest in his job unless that property interest was created by another source such as a local ordinance or a private contract.

b. Creation by local ordinance or private contract

It is an established principle of Indiana law that an employment relationship of indefinite or unspecified length is terminable at will by either employee or employer. *See Buethe v. Britt Airlines, Inc.*, 749 F.2d 1235 (7th Cir.1984) ("the general rule in Indiana is that an employee at will can be terminated at any time for any cause whatsoever, or for no cause at all"); *Ryan v. J.C. Penney Co.*, 627 F.2d 836 (7th Cir.1980) ("Under Indiana law, employment relations not for a definite term nor supported by consideration from the employee to the employer are terminable at will"); *Streckfus v. Gardenside Terrace Co-op, Inc.*, 504 N.E.2d 273, 275 (Ind.1987) ("an employment contract of indefinite duration is presumptively terminable at the will of either party"); *Lavery v. Southlake Center for Mental Health*, 566 N.E.2d 1055, 1057 (Ind.Ct.App.1991) ("An indefinite employment contract is terminable at the will of either party unless it is supported by independent consideration"). Mr. Kennedy did not have an agreement, written or implied, about the length of time he was to be employed by the Franklin Police Department. Thus, without more, he would be considered an at-will employee terminable at will by his employer.

The something more relied upon by Kennedy is a local ordinance passed by the Franklin Board of Public Works and Safety in April, 1982, which Kennedy contends became incorporated into his employment contract. While plaintiff also asserts that his property interest in continued employment arose, in part, by virtue of the "*practices* of the [Franklin Police] Department at the time Plaintiff was originally employed," Plaintiff's Brief in Support at 8 (emphasis added), the practices or customs of an entity do not ordinarily give rise to enforceable employment obligations as such practices or customs do not reflect a meeting of the minds with respect to the terms of an employment relationship. *See, e.g., State ex. rel. Miecznikowski v. City of Hammond*, 448 N.E.2d 1239, 1244 (Ind.Ct.App.1983) (holding that "practice [not] established by regulation, ordinance or statute" did not give rise to an enforceable property interest). Accordingly, if Kennedy had a property interest in continued employment it was created by ordinance incorporated into his employment contract and was not influenced by the unwritten practices of the Franklin Police Department.

Under Indiana law a property interest may be created by "ordinance or contract," *McQueeney v. Glenn*, 400 N.E.2d 806, 810 (Ind.Ct.App.1980), *cert. denied* 449 U.S. 1125, 101 S.Ct. 943, 67 L.Ed.2d 112 (1981), and, as a matter of law, statutes and ordinances in effect at the time a con-

8. This court find plaintiff's reliance on *Roth v. State ex rel. Kurtz*, 158 Ind. 242, 63 N.E. 460 (1902), to be misplaced. In *Roth* the Indiana Supreme Court construed a statute applicable to police officers that declared that "no member ... shall be dismissed except for cause." *Roth*, 63 N.E. at 464. The Indiana Supreme Court held that the quoted language applied to "members of the regular police force," *id.* at 461, and found such members dismissible only for cause. The *Roth* court also noted that the statutes in question treated "special policemen and firemen" differently than members of the regular force and made them dischargeable without cause by "clear and specific language." *Id.* at 463. However, the fact that the legislature used "clear and specific language," in a prior statute to clarify that some police officers were dischargeable without cause is not a reason to conclude that the legislature had to do so in a later statute. For as the *Roth* court made clear: "the general rule" is that, "where the power of appointment to an office is conferred by law in general terms, and without restriction, the power of removal at the pleasure or discretion of the authority making the appointment is implied, and always exists, unless or except restrained or limited by some other provision of the law." *Id.* at 464. There exists no such limiting provision in the statute at issue in this case.

tract is entered into become a part of a contract of employment. *Smulski v. Conley,* 435 F.Supp. 770, 772 (N.D.Ind.1977); *Kirmse v. City of Gary,* 114 Ind.App. 558, 51 N.E.2d 883, 885 (1944).[9] Besides the 1982 ordinance, Mr. Kennedy relies upon no other agreement or provision, written or oral, to establish a contractual right to continued employment. Kennedy's "contractual" claim of a property interest, therefore, is no more than a claim that the 1982 ordinance itself created a property interest.

The 1982 ordinance relied upon by Mr. Kennedy was ostensibly superseded in 1986 and 1988 by new ordinances which adopted new rules and regulations for the Franklin Police Department. The 1986 rules and regulations contained the following relevant provisions:

> G. If any complaint is filed against a Reserve Officer, it shall be handled as with a full-time Officer.
>
> H. A Reserve Officer may be dismissed at any time by the Chief, for a violation of the Rules and Regulations.[10]

The 1988 rules and regulations contained the provision that:

> H. A reserve officer may be dismissed at any time by the Chief.

Plaintiff contends that these regulations reflect a "pattern ... of moving from no distinction [between regular police officers and reserves] to summary dismissal," and concludes that, "[t]his indicates a recognition that in 1982 police reserves were protected by the same procedures as regular police officers." Plaintiff's Brief in Support at 11.[11]

What statutory rights Mr. Kennedy had in 1982 are irrelevant, however, if the ordinance granting those rights was repealed before Mr. Kennedy was terminated on February 15, 1990. A property interest (such as the interest in holding one's position until terminated for cause) which is created solely by statute can be extinguished by intervening legislation. Plaintiff argues that his employment contract incorporated the 1982 ordinance and could not be modified absent consideration for the modification. In Indiana, however, the rights and terms of offices created by statute may be taken away by statute. *See, e.g., State, ex. rel. Yancey v. Hyde,* 129 Ind. 296, 28 N.E. 186, 187–88 (1891) ("Offices are neither grants nor contracts, nor obligations which cannot be changed or impaired. They are subject to the legislative will at all times ... The term of an office may be shortened, the duties of the office increased, and the compensation lessened, by the legislative will") (citations omitted; quotation marks omitted); *Corn v. City of Oakland City,* 415 N.E.2d 129, 133 (Ind.Ct.App.1981) (judge's office which was created by municipal ordinance could be abolished by ordinance following election of judge). Thus, any rights given Mr. Kennedy by the 1982 ordinance expired when the ordinance was repealed.

9. Both of the cited cases involved *written* contracts of employment. Whether statutes and ordinances are automatically incorporated into non-written contracts of employment may be another matter. The issue is not addressed in this opinion.

10. Plaintiff notes what he labels a "patent conflict" between rules G and H. This court, however, sees no conflict between G and H unless one assumes, as is the plaintiff's position, that the Police Chief was required to file a complaint with the Board before terminating a reserve officer. Rule G can be read to refer solely to complaints filed against reserve officers by persons other than the Chief, such as citizens and other officers. Rule H, on the other hand, appears to give the Chief authority to dismiss a reserve officer on his own prerogative without filing a complaint or consulting the Board. Of course, it is an elementary rule of statutory construction that courts are to read statutory provisions as consistent and not in "conflict" whenever possible. *See, e.g., Irmscher v. McCue,* 504 N.E.2d 1034, 1036 (Ind.App.1987).

11. Plaintiff's argument that in 1982 police reserves were considered equivalent to regular members of the Franklin Police Department is undercut by the very ordinance which established the police reserve force in Franklin. That ordinance provided, in part, that, "[r]eserve Policemen shall be appointed by the same authority which appoints regular members of the Department and *may not be members* of the regular Police Force." Franklin City Ordinance No. 77–36 (attached to Defendants' Brief in Support of their motion for summary judgment) (emphasis added).

That is why Mr. Kennedy contends that the intervening 1986 and 1988 changes to the departmental rules and regulations were improperly promulgated and were, therefore, void. Plaintiff's argument that the 1986 and 1988 rules and regulations are invalid because of a failure to comply with statutory requirements is a hypertechnical one. Plaintiff contends that this court should find the 1986 and 1988 rules invalid because "[t]here is simply no assurance ... that the 1986 or 1988 Rules are, in fact, what the Council or the Board of Safety had in front of them and intended to promulgate." Plaintiff's Brief in Response at 22.

Plaintiff's argument might have some force if plaintiff had proffered any evidence that the rules submitted by both parties were not the ones passed upon by the Board. Plaintiff, however, did not submit any such evidence, nor did he contend that the rules submitted were not the ones actually passed. Indeed, plaintiff himself previously submitted both sets of rules and regulations to this court representing that they were the "1986 Rules and Regulations of the Department" and the "1988 Rules and Regulations of the Department." *See* Description of Exhibits to Plaintiff's Motion for Partial Summary Judgment (filed March 30, 1990) (plaintiff's attached motion for relief from local rule 12, regarding briefs in excess of 25 pages was denied). On this state of the record this court finds that there is no true dispute over the content of the rules and regulations that were actually authorized by the Board in 1986 and 1988. Accordingly, this court finds that the 1982 rules and regulations of the Franklin Police Department were superseded by the 1986 and 1988 versions.[12]

Regardless of whether the 1982 rules have been superseded however, this court finds that the 1982 rules and regulations of the Franklin Police Department as approved by the Board of Safety and Public Works did *not* include a provision specifying that reserve officers were terminable only for cause. Indeed, plaintiff does not argue that the 1982 Rules included an *express* termination only for cause provision. Instead, plaintiff argues that it can be *deduced* that the drafters of the 1982 Rules intended reserve officers to be terminated only for cause because: (1) the 1982 Rules *did not* specifically state that reserve officers were terminable without cause, (2) the 1986 version of the rules *did* note that reserve officers could be "dismissed at any time ... for a violation of the Rules" and (3) the 1988 version of the Rules *did* state that reserve officers were terminable "at any time" without cause. Plaintiff views these progressively more explicit descriptions of the Chief's power to terminate reserves as evidence that he originally did not have such a power. Plaintiff's attempt to imply a positive requirement of termination only for cause from silence, however, does not stand scrutiny.

Without a specific contractual provision or positive action by a legislative body (state or local) reserve police officers, like all other employees (public and private) in the State of Indiana, are terminable at the will of their employers. A legislature—by enactment, or a public or private employer—in a contract, need not state that a particular employee or class of employees is terminable at will, that result is accomplished by the common law of Indiana. This common law result can only be altered by a specific statement. The fact that the Franklin Police Department later codified the common law rule does not imply that it had previously intended to deviate from that rule.

12. This court finds inapposite the one case cited by Kennedy for the proposition that the "failure to follow statutory procedures ... is fatal" to the validity of a municipal ordinance. *See Fort Wayne Patrolman's Benevolent Assoc. v. City of Fort Wayne,* 408 N.E.2d 1295, 1301 (Ind.App. 1980). In *Fort Wayne* the court held that a city could not be held to the terms of a collective bargaining agreement that had been approved by the mayor but not by the Board of Safety as required by Indiana statute. In this case, in contrast, there is no argument that the authorized body did not ratify the rules at issue. Rather, the only possible dispute is over what was ratified and, as this court has shown, there is no real dispute over the content of the rules approved by the Board either.

c. Adequate Post Deprivation Remedy

Even if Mr. Kennedy had a protectible property interest in his job as a police reserve he would have a claim in this court only so long as he was not afforded an adequate post deprivation remedy. *See Parratt v. Taylor,* 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981). If Chief McCarty's act of terminating plaintiff was, as plaintiff alleges, outside the scope of his authority it would have been "impossible [for the City of Franklin] to provide a meaningful hearing before the deprivation." *Id.* at 541, 101 S.Ct. at 1916. Thus, this court looks to whether an adequate post deprivation remedy was available to Mr. Kennedy.

1. *Remedy if Mr. Kennedy had a property interest created by Ind.Code § 36-8-3-4*

**[11]** This court finds that such a remedy was available. Indeed, the very statute which Kennedy claims created his entitlement, *if it created such an entitlement,* provided his means of redress.[13] Pursuant to Ind.Code § 36-8-3-4(d)-(*l*) Mr. Kennedy, if considered a "member" of the police department, had appeal rights to the Franklin Board of Public Works and Safety. Indeed, Mr. Kennedy admits that he pursued this avenue of redress but was rebuffed by the Board. According to the statute, Mr. Kennedy then had thirty days in which to appeal in the circuit or superior court of Johnson County. *See* Ind.Code § 36-8-3-4(e)-(f).

Mr. Kennedy argues that these procedures for redress were ineffectual in his case. It is true that, according to Mr. Kennedy's allegations neither the Chief of Police nor the Board followed proper procedures under the statute (for instance, the statute provides that an officer holds office until dismissed by the board and makes no provision for dismissal by the Chief of Police, also, the board is required to enter "specific findings of fact upon the record" concerning any demotion or dismissal and the official minutes of the February 27, 1990, Board of Public Works and Safety Meeting reflect that this was not done) but these procedural violations cannot rise to the level of a due process violation as Mr. Kennedy still maintained his right to pursue his deprivation claim within the state system.

It should be kept in mind that a "violation of state law is not itself the violation of the [c]onstitution[al]" guarantee to due process. *Archie v. City of Racine,* 847 F.2d 1211, 1217 (7th Cir.1988), *cert. denied* 489 U.S. 1065, 109 S.Ct. 1338, 103 L.Ed.2d 809 (1989). "[T]he right to ... procedural guarantees is not itself a property right." *Roth,* 408 U.S. at 577, 92 S.Ct. at 2709. "There is neither a 'liberty' nor a 'property' interest in procedures themselves." *Fleury v. Clayton,* 847 F.2d 1229, 1231 (7th Cir.1988). Thus, Mr. Kennedy has no due process claim based solely upon the fact that the review process of Ind. Code § 36-8-3-4 was not followed. Nor does Mr. Kennedy have a constitutional due process claim based on his contention that "particular procedure[s] required by the Indiana Constitution were not followed when he was removed from office." *See* Plaintiff's Brief in Support at 16-18.

Mr. Kennedy argues that the state procedures did not afford him an adequate remedy because the Board of Public Works and Safety took no action on his request that he be reinstated. Mr. Kennedy, however, could have pursued this claim in state court. The transcript of the February 27, 1990, Board of Public Works meeting submitted by Mr. Kennedy reflects that Mr. Kennedy's attorney was given ten minutes to plead Mr. Kennedy's case to the Safety Board. After this plea, the mayor discussed with the counsel to the Board whether the Board had jurisdiction to overturn the police chief's decision to terminate Mr. Kennedy. The apparent conclusion, in the words of the Board's attorney, was that, "the Board of Works doesn't have,

13. This court has already held that the Indiana Code did not create an entitlement or claim of right to continued employment for reserve police officers. The issue of an adequate post deprivation remedy is addressed merely as an alternative holding were Kennedy's claim of entitlement to be accepted.

any ... authority to interfere in interdepartmental type problem[s] [like the decision to fire Mr. Kennedy] which is (sic) handled by the Chief." Transcript at 6. The minutes of the February 27, 1990, meeting reflect that, "[n]o action was taken" on Mr. Kennedy's request for reinstatement.

While the Board did not officially ratify the Chief's decision, the Board's "inaction" was still conduct sufficient to permit Mr. Kennedy to take an appeal pursuant to Ind.Code § 36–8–3–4—at the very least Kennedy could have sought a writ of mandamus to force the Board to hear his appeal. Moreover, the minutes of the February 27, 1990, meeting also indicate that later in the meeting the Board accepted the letter of termination from McCarty to Kennedy that was presented to the Board. This court finds this act alone sufficient ratification of Chief McCarty's actions to have been appealable by Mr. Kennedy pursuant to the procedures of the Indiana statute.[14]

2. *Remedy if Mr. Kennedy had a property interest created by local ordinance or private contract*

Even if a property interest was not created by Ind.Code § 36–8–3–4 but was created by local ordinance or private agreement, Mr. Kennedy could not pursue his claim in this court because Indiana permits public employees to sue in state court to vindicate their contract rights whether those rights have been established by private agreement or by reason of a statute or local ordinance that has become a part of a public employee's employment contract. *See e.g., City of Peru v. State ex rel. McGuire,* 210 Ind. 668, 199 N.E. 151, 153 (1936) (where fireman was dismissed without the hearing provided for by statute he was authorized to seek a writ of mandamus in order to obtain reinstatement; to recover monetary damages "his remedy was an action against the city for breach of contract of employment"); *Wells v. Auberry,* 476 N.E.2d 869, 873 (Ind.Ct.App.1985) (permitting deputy sheriff to recover lost salary following demotion where prior to demotion he was not given due process protections afforded by departmental rules);[15] *Coates v. City of Evansville,* 149 Ind.App. 518, 273 N.E.2d 862, 868–69 (1971) (permitting breach of contract action for violation of statutorily created rights). Thus, if Mr. Kennedy had a *contractually* created property interest in his employment then, because Indiana allows suits to enforce such rights, he could have pursued his claim in state court and, he may not pursue it here.

For each of the above reasons, defendants' motion for summary judgment with respect to plaintiff's due process claim based on deprivation of a property interest is GRANTED and this claim will be removed from this case pursuant to a separate written order.

2. *Liberty interest*

The contention that Mr. Kennedy was deprived of a liberty interest by Chief McCarty's post-termination comments to the press also does not withstand scrutiny. It is true that dismissal from public employment accompanied by charges of serious misconduct can so "stigmatize" an employee and diminish his/her future opportunities to earn a livelihood that violation of the employee's occupational liberty occurs. However, this court is doubtful that the allegations in plaintiff's amended complaint—that "McCarty said Kennedy was fired for repeatedly questioning his authority"—are sufficient allegations that his "good name, reputation, honor, or integrity" are "at stake." to constitute a deprivation of his liberty interest in those items. *Roth,* 408 U.S. at 573, 92 S.Ct. at 2707.

Moreover, the Seventh Circuit has held that, "[t]he principle does not reach a case where the employee is fired from a

14. Finally, even if the Board's conduct cut off Mr. Kennedy's ability to appeal the decision to terminate him pursuant to Ind.Code § 36–8–3–4, Kennedy's remedy, as described in the next section, was to bring an action for breach of contract.

15. While the plaintiff in *Wells* also had a constitutional due process claim that was coextensive with his claim based on the departmental rule, there is every indication that he could have recovered on the basis of the departmental rule itself without asserting his constitutional rights.

part-time, honorific job while retaining the employment that gives him his livelihood." *Jungels v. Pierce,* 825 F.2d 1127, 1131 (7th Cir.1987). The job at issue in *Jungels* (membership on the civil service commission of Aurora, Illinois) paid more ($40–$50 per meeting) than Mr. Kennedy's appointment as a police reserve. There is no question that the dismissal of Mr. Kennedy over one year ago has not resulted in the loss of Mr. Kennedy's primary means of employment.[16] Thus, in accordance with the holding in *Jungels,* Mr. Kennedy will not be permitted to pursue his claim of deprivation of a liberty interest at trial.

B. First Amendment Claims

Plaintiff has moved for summary judgment on his first amendment claims that he was discharged in retaliation for exercising his first amendment rights and that his first amendment right to seek government redress of grievances has also been violated by the same conduct. Plaintiff notes that, "[a] violation of the petition clause is analyzed in the same way as the violation of the free speech clause." Plaintiff's Brief in Support at 22 (*citing Belk v. Town of Minocqua,* 858 F.2d 1258, 1262 (7th Cir.1988)).

In order to decide both claims this court is called upon to determine why Chief McCarty fired Mr. Kennedy. While Mr. Kennedy claims that the reason for his termination was the exercise of first amendment rights, there is some evidence that the discharge was prompted, not to quell Mr. Kennedy's comments, but because Chief McCarty felt like he could not work with Mr. Kennedy because Mr. Kennedy questioned his authority. *See* Deposition of Norman Blankenship at 34 (excerpts submitted as Exhibit I in Appendix of Exhibits to Plaintiff's Brief Opposing Defendants' Motion For Summary Judgment). Thus, this court finds that there is a material issue of fact precluding summary judgment on the first amendment claims.

Moreover, as plaintiff notes, in order to resolve the first amendment questions presented this court would be required "to balance the interest of the Plaintiff as a citizen in commenting on matters of public concern with the Department's interest, as an employer, in running an efficient operation." Plaintiff's Brief in Support at 20 (*citing Pickering v. Board of Education,* 391 U.S. 563, 568, 88 S.Ct. 1731, 1734, 20 L.Ed.2d 811 (1968)). This court finds the state of the record insufficient to undertake such a balancing at this stage. For both of these reasons the plaintiff's motion for summary judgment on his first amendment claims is DENIED.

At the October 24, 1991, hearing defendants argued that they were entitled to summary judgment on plaintiff's first amendment claim. At that time this court noted defendants had not filed a written motion for summary judgment on this point with this court. This court may not consider defendants' arguments for summary judgment on the first amended complaint until defendants comply with the strictures of both local Rules 9 and 11, requiring separate written briefs for motions for summary judgment.

C. Punitive Damage Claims

The defendants seek an order restricting plaintiff's punitive damages claim. The Supreme Court has held that "a municipality is immune from punitive damages under 42 U.S.C. § 1983." *Newport v. Fact Concerts, Inc.,* 453 U.S. 247, 271, 101 S.Ct. 2748, 2762, 69 L.Ed.2d 616 (1981). Suing Chief McCarty in his official capacity is no different than suing the City of Franklin. Thus, punitive damages on the federal constitutional claims are not recoverable against either the City of Franklin or Chief McCarty in his official capacity and defendants' motion for summary judgment as to punitive damages on the federal constitutional claims will be GRANTED in this respect.

This court will consider other arguments with respect to the availability of punitive damages in the context of the parties' jury instructions. Therefore, as to all other aspects of defendants' motion for summary

16. Mr. Kennedy's attorney confirmed this fact at the hearing held on October 24, 1991.

judgment on plaintiff's punitive damage claims, the motion is DENIED.

### D. Governmental Immunity

 Defendants' devote an entire paragraph of their summary judgment brief to their claim that governmental immunity pursuant to Ind.Code § 34–4–16.5–3(7) immunizes them from liability for plaintiff's pendent state tort claims.[17] *See* Defendants' Brief in Support of Motion for Summary Judgment (filed July 27, 1990) at 16–17. Defendants, however, fail to explain how Chief McCarty was "enforc[ing] a law" at the time he terminated Mr. Kennedy's employment or at the time that he made his comments to the press about the reason for Mr. Kennedy's termination. Accordingly, this issue may not be resolved at this time and defendants' motion for summary judgment in this respect is DENIED. This court will consider any additional governmental immunity issues in the context of jury instructions, at which time this court anticipates a more thorough description of any theory advanced.

### E. Tort Claims Act Defense

The defendants raised for the first time in their reply brief on their summary judgment motion the contention that plaintiff's wrongful discharge claim is "barred by the failure to file notice as prescribed by the Indiana Tort Claims Act, I.C. 36–4–16.5–1." Defendants' Reply Brief (filed December 10, 1990). This court will not address an argument that was only raised for the first time in a reply brief. No motion having been made in this respect it is unnecessary for this court to grant or deny anything.

### F. Plaintiff's Complaints about Chief McCarty's Conduct

As this court has described, *see supra* at note 3, the plaintiff loaded his complaint with more than ten pages of allegations that are not even arguably relevant to the claims he is pursuing. Mr. Kennedy's counsel should have been aware—and Mr. Kennedy is now advised—that the only information about Chief McCarty's conduct either on or off the job that is appropriately addressed in this lawsuit is that conduct which would tend to show that Kennedy was terminated from his position as a reserve officer in a tortiously wrong or constitutionally deficient manner. Why Mr. Kennedy was upset with the Chief or what sort of job Kennedy felt the Chief was doing are matters irrelevant to Kennedy's claims in this suit. Such concerns might be a suitable subject for debate in a political forum in which the major issues of the day could be resolved. However, they have no place in a pleading filed in this suit brought to obtain relief for wrongs of both a tortious and constitutional nature. A pleading filed in a lawsuit should not be used as a vehicle to spread rumor and gossip about one's adversary.

Accordingly, paragraph "VI. J." of plaintiff's first amended complaint (located on pages 14 through 24 of that complaint) is ORDERED stricken, pursuant to the court's authority under Fed.R.Civ.P. 12(f) to strike immaterial, impertinent and scandalous matters.[18]

ALL OF WHICH IS ORDERED.

---

**17.** Ind.Code § 34–4–16.5–3(7) provides:
A governmental entity or an employee acting within the scope of his employment is not liable if a loss results from ... [t]he adoption and enforcement of or failure to adopt or enforce a law (including rules and regula-

tions), unless the act of enforcement constitutes false arrest or imprisonment.

**18.** This case will be set for trial on August 3, 1992, pursuant to a separate written scheduling order.